Bunner and Manning, Executors, &c. of Thomas Storm, v. Garret Storm and others.

A testator directed that one-seventh part of his estate should be equally divided among his three daughters, Elizabeth, Mary and Catherine, and the heirs of his deceased daughter, Hester, viz:, T. S. B. and C. F. B.; and that the furniture, &c. left to his wife, should after her decease, be equally divided among his last named three daughters, and the heirs of his said daughter deceased:

*Held,* 1. That the language of the will being plain, and not ambiguous, using no doubtful terms or designation of objects requiring explanation to make them intelligible; extrinsic evidence, although it was offered in the testator's hand-writing, was inadmissible to show that he intended to give to the two heirs of Hester together, only one-fourth of the foregoing devise and bequest.

And 2. That each of the heirs of Hester, as well as each of the surviving daughters, took one-fifth of the gift; and that the same was divisible *per capita,* and not *per stirpes.*

By the will, one-seventh of the estate was given to Catherine, and then after be-
quests to others, a further interest in another seventh, and in the furniture was
given to her.   The will then made some deductions from the seventh part
first bequeathed to her.   The next clause required the executors as her trustees, to
to take  and  receive the *full net amount,* which should be coming to her, *as di-*
*rected.*

*Held,* that the trustees were  to receive the further bequests to her, as well as the
seventh part first given to her by the will.

The testator directed the bulk of the estate, both real and personal, to be sold by his
executors, at such time, in such proportions and manner, and on such conditions,
as in their judgment should be best for those interested ; if an equal, valid and sa-
tisfactory division thereof in part or in the whole, could not otherwise be made :
*Held,* that the necessity for a sale was left to the judgment of the executors, and
could not be controlled by the court, if exercised in good faith.

Two executors who have qualified,  may  execute  conveyances on a sale made by
them under a power in a will given to five executors ; the other three having
renounced, or neglected, or refused to act, or being incompetent.

The testator had charged various amounts to his children, and his will directed them
to account for the same in the  division of his estate, but without interest.   The
decree directed such amounts to be brought into the first dividend of the estate ;
and if a balance remained due from either, that it be deducted in the next divi-
dend, and no interest to be charged on such balance.
    February 21 ; March 14, 1844.

THE bill was filed on the 4th of January, 1843, by the acting
executors of Thomas Storm, deceased, against his children, de-
visees and legatees, to settle the construction of his last will
and testament, which was executed by him on the 30th of
March, 1833.

The testator left two sons, Garret and Stephen, and three
daughters, Elizabeth Manning, Mary King, and Catherine, the
wife of James Cooper.

He also left two grandchildren, Thomas S. Bunner and
Charles F. Bunner Jr. the children of his deceased daughter,
Hester.   He had a fifth daughter, Ann, who died in his life
time, without issue.

Two infant children of Cooper and wife were made parties,
in reference to a point arising upon one of the bequests in the
will.

The testator directed the bulk of his estate, both real and
personal, to be sold by his executors, at such time or times, in
such manner, in such proportions, and on such conditions, for

ready cash or on credit, as in their judgments should be most conducive to promote the interests of all concerned; if an equal, valid, and satisfactory division thereof, in part or in the whole, could not otherwise be made. He then proceeded to direct its distribution. The other clauses of the will which were brought in question, are fully stated in the decision.

The executors named in the will, were the two sons of the testator, the complainants, and T. S. Hubbard, a grandson, The two sons renounced, and Hubbard is an infant.

*J. A. Manning* and *B. W. Bonney*, for the complainants.

*J. Slosson*, for Cooper and wife.

*C. Edwards*, for their infant children.

*H. F. Clark*, for T. S. Bunner and C. F. Bunner Jr.

THE ASSISTANT VICE-CHANCELLOR.—The first question presented, arises upon the power of sale conferred upon the executors in regard to the real estate.

The testator reposed upon their judgment, as to the time, manner, and terms of the sale; but it was only to take place "if an equal, valid and satisfactory division thereof, in part or in whole, cannot otherwise be made."

I am satisfied that he intended to make the executors the judges of the necessity for a sale. If they became convinced that a partition, equal and satisfactory, would not be made among the devisees, either because of their legal disabilities or their indisposition to make the requisite concessions; or that such a partition was not practicable on account of the situation of the estate itself; then the will clothed them with the power to sell. A *valid* partition could only be made by the agreement of competent parties, or by a court having jurisdiction.

The testator declares in his will that he has not, in making it, consulted any *professional character*, and he provides for an arbitration if any difficulties should arise in its construction. It is evident therefore, that a resort to this court to determine

whether the contingency had occurred on which the executors were empowered to sell, did not enter into the contemplation of the testator.

The testimony shows that a partition cannot be made with due regard to the rights and interests of the parties entitled. But no declaration to that effect can control the exercise of the discretion of the executors, as to the execution of the power of sale. Their judgment upon the question is conclusive, if made in good faith.

The opinion of the court was asked upon the execution of the power of sale by the two executors who have qualified, the others having renounced, or neglected, or refused to act.

The Revised Statutes expressly declare that in such a case all sales made by the executors who take upon themselves the execution of the will, shall be equally valid as if the other executors had joined in such sale. This extends to the execution of the conveyance, as well as to the making of the sale, in its restricted sense. See *Sharp* v. *Pratt*, (15 Wend. 610 ;) *Ogden* v. *Smith*, (2 Paige's R. 197, 198.)

2. The most litigated question arising in the case, is upon the following clause in the will, viz. :

"And as it hath also pleased Almighty God to remove my daughter Ann by death, and as my said daughter Ann, had she survived me, would have been entitled to one seventh part of my estate equal with my other children and heirs, it is my will that the said seventh part last named, after the deductions agreeable to this my will shall have been made, that the remainder of the said seventh part shall be equally divided among my three daughters, Elizabeth, Mary, and Catherine, and the heirs of my deceased daughter Hester, viz : Thomas S. Bunner and Charles F. Bunner Jr. ; and also that after the decease of my beloved wife, all the household and kitchen furniture, together with the linen and clothing which had been in the use and occupancy of my beloved wife at and immediately previous to her decease, shall also be equally divided among my *last* named three daughters, and the heirs of my said daughter deceased."

The two Bunners claim that they are equally entitled with the three daughters living, each to one-fifth part of these bequests ; while the daughters contend that they each take one-fourth part, and that the Bunners are entitled jointly to the remaining fourth part, which their mother would have received if living.

To sustain the claim of the three daughters, parol evidence was given. I call the extrinsic evidence in this case, *parol*, as distinguished from the statutory evidence of intention contained in the will ; although that chiefly relied on is in the hand-writing of the testator, and made only a few days before the date of the will.

If the court were at liberty to receive such testimony, it would be very strong, perhaps conclusive, to show that the testator intended to give to the two Bunners no more than their mother's share of the portion of his deceased daughter, Ann. And it is quite probable that in his marked jealousy of *professional characters*, he has framed his will so as to defeat his intention in this particular.

I feel entirely clear, however, that the extrinsic evidence is not admissible. The language of the will is plain and not ambiguous. No doubtful terms are used, and no designation of objects requiring explanation to make them intelligible. The court, by applying well settled principles of construction, can have no difficulty in declaring the intention, from what is expressed in the will.

Mr. Jarman, in his recent valuable treatise on wills, says, " It is clear that parol evidence of the actual intention of a testator is inadmissible for the purpose of controlling or influencing the construction of the written will, the language of which must be interpreted according to its proper acceptation, or with as near an approach to that acceptation, as the context of the instrument, and the state of the circumstances existing at the time of its execution, (which as we shall presently see forms a proper subject of inquiry,) will admit of." (1 Jarm. on Wills, 358. And see 1 Powell on Devises, 465, Jarman's edition.) There are many pointed cases on this subject in the reports. Without citing them at large, I will refer to the will of the Earl

of Oxford, *Lord Walpole* v. *Earl of Cholmondeley*, (7 T. R. 138, and 2 Ves. 402;) *Earl of Newburgh* v. *Countess of Newburgh*, (5 Madd. 364;) *Doe d. Oxenden* v. *Chichester*, (4 Dow P. C. 65;) *Mann* v. *Mann's Executors*, (1 J. C. R. 231.)

In *Peacock* v. *Falkner*, (1 Bro. C. C. 296,) Lord Thurlow said that evidence could not be read to prove what *the testator meant by the words used in his will*, but it might *as to facts* upon which he made his will.

Rejecting the extrinsic evidence, and looking to the plain language of the will, there is no doubt but that each of the Bunners took the same interest in the bequest in question, as their three aunts who are named.

In 2 Powell on Devises, by Jarman, 331, it is said that where a gift is made *to a person*, described as standing in a certain relation to the testator, and *to the children* of another person standing in the same relation, as to "my brother A. and the children of my brother B.;" A. only takes a share equal to one of the children of B., though it may be conjectured that the testator has a distribution according to the statute in his view.

The authorities abundantly support this position.

Thus in *Blackler* v. *Webb*, (2 P. Will. 383,) the testator bequeathed the surplus of his personal estate equally to his son James, and to his son Peter's children, to his daughter Traverse and to his daughter Webb's children, and his daughter Man. It was decided that each of the children of Peter and of Mrs. Webb, took the same share that was taken by James and the other children of the testator named as legatees.

In *Dowding* v. *Smith*, (3 Beavan, 541,) the words of the will were these: "then the residue of the property do devolve to my niece Miss Mary Stockdale, of Piccadilly, and to the children of Mr. John Stockdale, to be equally divided." There were five children of John S., one of whom was born after the testator's death, but before the period for distribution arrived. The argument that the division was intended to be made in classes, was pressed upon the Master of the Rolls, but he decided that the residue must be divided *per capita*.

In *Lenden* v. *Blackmore*, (10 Simons' R. 626,) the will

directed that after a certain event, the residue was "to be equally divided between Sybilla Lenden and Mary Seyer, daughters of my sister Elizabeth Seyer, and Elizabeth Blackmore, daughter of my sister Susannah May, and her children." At the death of the testator, Elizabeth Blackmore had eight children, and one more was born after that time but before the period of distribution. The Vice-Chancellor of England dedided that the residue must be divided into twelve shares, Mrs. Blackmore and her nine children each taking one.

In *Warrington* v. *Warrington*, (2 Hare's R. 54,) the testatrix gave "all other his real and personal estate and property in the joint stock bank called," &c. "with all the rest, residue and remainder of my trust estate and property, whatever and wherever not herein disposed of; I leave equally between my brother Thornhill Warrington, my sister Ann Van Corlandt, widow, my nephew William Henry Warrington and Emma his wife, their heirs and assigns," &c. In a previous clause of the will, the testatrix had spoken of Emma as her "dear niece." She was a niece, and her husband was a nephew of the testatrix. Sir James Wigram, V. C., decided that William Henry Warrington and Emma his wife, *each* took an equal share with the other two legatees and devisees. He says, "the number of shares into which the residue is divided, must be determined by counting the legatees among whom it is *equally* given." "Here was a gift in severalty to several persons. There is nothing in the disposition of the names which can import any intention to treat either of them differently from the other legatees." "The husband and wife were equally of kin to the testatrix."

In the case before me, all the considerations mentioned in the judgment in *Warrington* v. *Warrington* apply ; and with the more force, because in that case the argument was strong against giving two shares to the husband and wife because they were in law, but one person.

Here the share of Ann was to be *equally* divided among five persons named. Three of the five were children, and two were grandchildren. They are described accordingly. And the argument upon the language of the bequest, (leaving out of

view what we may conjecture as to motives and intention,) is·
as strong in favor of restricting the three daughters to one-half,
as a class, as it is for restricting the two grandsons in the same
manner to one-fourth.

By counting the persons amongst whom it is to be equally
divided, we find there are five designated by name.  It is impos-
sible to say that of those five, two are to take only one-eighth
part each, when the will says that it shall be *equally divided.*

The two Bunners are each entitled to one-fifth part of the
property described· in the will as the share to which the testa-
tor's daughter Ann would have been entitled, if living.(*a*)·

3.  The guardian ad litem of Mrs. Cooper's children, insists
that her proportion of Ann's share last mentioned, (which will
be one-fifth,) is to be held by the trustees named in the will,
and not paid over to her.  The executors are made trustees for
her, and are directed to take and receive from the estate "*the*
*full net amount*" which should be coming to her " *as directed.*"
The clause immediately preceding, is a direction to the execu-
tors to take from her seventh part, sufficient to provide for the
support of two of her children by a former husband during
their minority ; and the next succeeding paragraph gives to
each of them on attaining their full age, two thousand dollars
out of the same seventh part.  It is urged that the words, "*net*
*amount,*" limit this trust· to the net amount of this seventh part.

It is to be observed that the gift of the seventh of the estate
to Mrs. Cooper is made in a previous part of the will, before any
allusion is made to Ann's share, and without any reference to
the trust.  The gift of the one-fifth of Ann's share is also
directly to her.  Then we find as to Ann's seventh part or share,
the executors, before dividing· it, are to make the same deduc-
tions from it for charges and advances to her, as are directed in
reference to the other shares of the estate, and then to divide
" the remainder."· The words " net *amount,*" are therefore

(*a*) To the same effect, see *De Witte* v. *De Witte,* (11 Simons, 41 ;) *Tomlin* v.
*Hatfield,* (12 Ibid. 167 ;) *Bustard* v. *Saunders,* (7 Beav. 92.)

applicable to this residuum, as well as to that obtained from the seventh part of the estate first given to Mrs. Cooper.

And there is no other expression which can be laid hold of to distinguish the one-seventh from the fifth of Ann's share, in the direction to the executors to take in trust the amount which shall be coming to Mrs. Cooper. The words "remaining amount," are referrible to the same residuum of the whole devise and bequest to her.

I think that no distinction was intended by the testator, and that it all goes to the trustees alike.

4. In regard to interest on the various amounts charged by the testator to his children, and which he directs them to account for in the division of his estate, but without interest; it is equitable that such amounts should be brought into the first dividend made of the estate, and if any balance remains due from either child, such balance to be deducted from the next dividend. And according to the express injunctions of the testator, no interest is to be charged on such amounts, or any part of them, although it may require more than their share in the first division or dividend to absorb the same.

There will be a decree accordingly, with costs of the respective parties to be paid out of the estate.