## SUPREME COURT.

THOMAS M. MYRES and another, executors, &c. agt. DUDLEY
MYRES and others.

*Construction of a clause in a will.*—The testator, Isaac Myres, in the seventh
clause of his will, made a bequest in these words : " *Seventh.* I give, devise and
bequeath unto my son Thomas M. Myres, and the heirs of my son·Melancthon
W. Myres, and their heirs forever, all the rest and residue of my real and per-
sonal property of whatever name, to be equally divided between my son Thomas
M. Myres and the heirs of my son Melancthon W. Myres :"

*Held,* that there being nothing in any other portions of the will suggesting any
different understanding of this clause than must be given to it in a separate read-
ing, it gives the property to Thomas M. Myres and the five children of Melanc-
thon W. Myres in six *equal parts;* that is, the beneficiaries under this clause
of the will take *per capita* and not *per stirpes.*

*Saratoga Special Term, March,* 1862.

THIS action is brought to obtain construction of the will
of Isaac Myres, deceased.

W. A. BEACH, *for plaintiffs.*
L. B. PIKE, *for defendants.*

BOCKES, Justice.   The question arises under the seventh
clause of the will, which reads as follows :  " *Seventh.*—I
give, devise and bequeath unto my son Thomas M. Myres,
and the heirs of my son Melancthon W. Myres, and their
heirs forever, all the rest and residue of my real and per-.
sonal property of whatever name, to be equally divided
between my son Thomas M. Myres and the heirs of my son
Melancthon W. Myres."

The heirs of Melancthon W. Myres, alluded to in the
will, are his children Henry W. Myres, John Myres, Wil-
liam O. Myres, Dudley Myres and Dorcas Myres.   The
defendant, Abigail Myres, is the widow of Melancthon,
who, by the will, was to have " *her support out of the lega-
cies bequeathed*" to Melancthon's children, so long as she
should remain his widow.

Under the clause of the will above set out, Thomas claims that he is entitled to one-half of the residue and remainder of the property of which the testator died seized, after satisfying all other legacies and bequests, and that the heirs of Melancthon take the other half—whereas such heirs claim and insist that the entire residue and remainder should be divided into six equal parts, of which Thomas is entitled to one part, and they to the other five.

The question is, therefore, whether, by the true construction of the will, the beneficiaries under the seventh clause take *per stirpes* or *per capita*.

On the trial an offer was made by the plaintiff to show by parol, that the testator intended that they should take *per stirpes*, which offer was rejected. This ruling was manifestly correct. The will is in no respect ambiguous. It must receive construction according to the fair import of its terms. It was held, in *Arthur* agt. *Arthur*, (10 *Barb.*, 9,) that parol evidence was inadmissible to control or explain the intention of the testator, or to vary the legal construction of the will. The cases on this point are collected in *Arthur* agt. *Arthur*, (*see p.* 16,) and are entirely conclusive. (*See also Mann* agt. *Mann*, 1 *John. Ch.*, 231; *Baum* agt. *Stone*, 1 *Sand. Ch.*, 357.)

The will must therefore be taken to express the intention of the testator, and his intention is to be collected from the words of the will. What, then, was his intention, under a fair construction of the language employed to express his purpose? It is sometimes the case that other portions of a will throw light on the particular clause to be construed; in which case the whole instrument must be read together, and the will must be so rendered as to carry out the scheme of the testator, in the disposition of his property, in all its parts. By this mode of examination the intention is determined. But I am unable to discover anything in the other portions of this will which suggests any different understanding of the seventh clause than must

be given it on a separate reading. Its application is clear and definite as regards property; the beneficiaries are unmistakably designated : and the distribution is directed in language, as well understood when the clause is read by itself, as when read in connection with other portions of the will.

Perhaps the clause of the will may be simplified somewhat by omitting superfluous words, and inserting the names of the persons designated by " heirs of my son Melancthon." It will then stand thus : I give, devise and bequeath unto Thomas M. Myres, Henry W. Myres, John Myres, William O. Myres, Dudley Myres and Dorcas Myres, all the rest and residue of my real and personal property, to be equally divided between them.

Were this the reading, no question could exist as to the clear import of the sentence. How does the will differ from this ? The words, heirs of my son Melancthon, are used, for aught that appears to the contrary, simply to designate the beneficiaries instead of naming each by his proper name—to describe the legatees, not to denote succession.

It must be held in mind that the testator had a perfect right to dispose of his property according to his own inclinations. He could discard or remember with favor, as his caprice or sense of justice might dictate. He could have given all to Thomas, or all to Melancthon's heirs, and to all or any in equal or unequal portions. Whatever he gave either, was a matter of favor and bounty. It was his privilege to direct the distribution of his property, and having done so according to the forms of law, he must be deemed to have intended what he has solemnly declared in that regard, and the will must stand as the reason for his acts. The question therefore recurs, what is the fair import of the will, construing the language employed according to its ordinary and primary meaning ? What do the words of the will denote ? It was laid down by PARKER, B., in *Sams*

agt. *Garlick,* (14 *M. & W.,* 701,) that the meaning of the words employed must be taken as the intention of the testator. He observes that " difficulties have arisen from confounding the testator's *intention* with his *meaning.* Intention may mean what the testator intended to have done, whereas the only question in the construction of wills is on the *meaning of the words.*"

The language employed in this will is nearly if not precisely the same as in several adjudged cases, and it seems to me that this question of construction can hardly be regarded as open to discussion.

It appears to be determined by authority, in *Collins* agt. *Hoxie,* (9 *Paige,* 81,) the testator gave the residue of his property to be divided equally among the children of his sister Mary, his brother Solomon, and his brother John. At the time of the testator's death, there were eight children of his sister Mary, nine of his brother Solomon, and six of his brother John. In this case the chancellor remarked : the settled rule of construction in such cases seems to be, that all the legatees take *per capita,* unless there is something in the will itself indicating a different intention on the part of the testator ; and he adhered to this construction, notwithstanding he supposed there might be some doubt whether the testator intended the children of each should take an equal share of the residuary property, or that each of the children of the three should share equally among themselves. In *Bunner* agt. *Storm,* (1 *Sand. Ch.,* 357,) the testator directed that one-seventh part of his estate should be equally divided among his three daughters, Elizabeth, Mary and Catharine, and the heirs of his deceased daughter Hester. It was held that they took *per capita,* and not *per stirpes.* In this case the assistant vice-chancellor examines *Blacklee* agt. *Webb,* (2 *P. Will.,* 383 ;) *Dowding* agt. *Smith,* (3 *Beavan,* 541 ;) *Leerdin* agt. *Blackman,* (10 *Simons' R.,* 626 ;) *and Warrington* agt. *Warrington,* (2 *Hare,* 54,) and decided it on the strength of these

decisions. In *Murphy* agt. *Harvey*, (4 *Edw. Ch.*, 131,) the
testator bequeathed to his brothers J. and M., and sister
M., and in case of the death of either of them, to their
*heirs*, to be equally divided among them who shall survive,
and the children and heirs of the deceased. Both brothers
and sister died before the testator, and one of the sons of
the sister had died also, leaving children. It was held that
these children of the sister's deceased son were to be let in,
and took *per capita*.

It is laid down in the elementary works as a general pro-
position, that when a gift is made to a person described
or standing in a certain relation to the testator, and to the
children of another person standing in the same relation to
him, the beneficiaries take *per capita*. This rule of con-
struction has been adhered to both in England and in this
country, in all cases so far as they have fallen under my
observation. In addition to the cases above cited, the fol-
lowing also bear on the question : 12 *Simons*, 167 ; 3 *Bro.*,
367 ; 2 *Bro.*, 383 ; 17 *Eng. Law & Eq.*, 125 ; 2 *Jones' Eq.*,
*N. C.*, 202 ; 2 *id.*, 215 ; 3 *id.*, 100 ; 3 *id.*, 208 ; 9 *Rich Eq.*,
*S. C.*, 459 ; 10 *id.*, 1 ; 7 *id.*, 125 ; 30 *Alabama*, 391 ; 3
*Sand.*, 555. In *Dowding* agt. *Smith*, (3 *Beavan*, 541,) the
gift was to A. and to the children of B., to be equally di-
vided ; it was held that they took *per capita*. In *Blacklee*
agt. *Webb*, (2 *Brown*, 383,) the testator gave the residue
of his personal estate to his son A. and to B.'s children,
and to his daughter C. and to D.'s children, and to E. B.
was dead, leaving several children. It was held that B.'s
children and D.'s children took *per capita*, as if all were
named. In several of these cases, the words " to be equally
divided," or similar words, were deemed controlling in
import. So it was said in *Daggett* agt. *Slack*, (8 *Met.*,
450,) that where there was a devise to " heirs," and no
words to control the presumption of the will of the testator,
the law would presume his intention to be that they should
take as heirs would take by the rules of descent. But that

such presumption would " be easily controlled by any words in the will indicating a different intention of the testator; as if, after a devise to ' *heirs,*' it be added, in equal shares; or share and share alike; or to them and each of them; or equally to be divided; or any equivalent words intimating an equal division, then that they would take *per capita,* each in his own right."

In *Walker* agt. *Griffin,* (11 *Wheaton,* 375,) the devise was " to the families of C. and J. T. Griffin's children in equal proportions." It was first determined in this case—and on a fair reading of the entire will, some other parts bearing on the question—that this language meant the same as if the word children had been omitted. Then the devise stood as if it had been a devise " to the families of C. and J. T. Griffin," and thereupon it was held that they took collectively distinct and equal shares by families. Chief Justice MARSHALL remarks, in effect, that the natural and obvious construction of the devise in this form would be, that the *families* took equally; and he adds, " *had he intended them"* (the heirs or children) " to take equally, the natural mode of expressing that intention would have been to devise the property to the children of Cyrus and John T. Griffin. *They would then have taken individually, and not by families;* but the testator directs them to take by families."

Thus it will be seen that this case is in entire conformity with the other cases cited, and in support of the conclusion that in this case the parties take *per capita.*

It is suggested that the word " between," as used in this will, has a different signification from the word " among;" that it carries an idea of a division into two parts, whereas " among" imports a division into many parts. I find, however, that *between* is often used as synonymous with *among,* especially when employed to convey the idea of division or separate ownership of property held in common. It is quite as appropriate to say that property is to be divided

*between* A., B. and C., as *among* A., B. and C.   So Webster says : " We observe that between is not restricted to two," and he illustrates thus : " twenty proprietors own a tract of land between them." This word was used in several of the cases cited, yet it was not regarded as at all influential on the question of construction.   So in *Lord* agt. *Moore,* (20 *Conn.,* 122,) the testator leaving a wife and four children, gave the income of the residue of his estate to be divided equally " between" his wife and children ; held, that the wife took a share of the income equal only to that of one of the children.   It is impossible, I think, to mark a distinction by the use of this word, which will admit of a construction of the will differently from that given in the cases cited, where similar language was employed to express the intention of the testator.   The words which are deemed to control the construction in these cases, are those which denote that the division was to be between or among the legatees *in equal parts*.

The rule of construction in the cases cited must be adhered to, and in my judgment embraces this.

It is quite possible that the testator intended a division by which Thomas should receive one-half of the residue of his property ; but we must have resort to the will alone to determine his intention, and there it is not so expressed. If a mistake has occurred in the will—if it does not correctly declare the testator's intention, as was said by chancellor WALWORTH, in *Collins* agt. *Hoxie*—it is not in the power of the court to correct the mistake.   It must be presumed to express his intention according to the fair and legal import of the language adopted, to denote his wishes and purposes.

There must be a decree in accordance with the views above expressed.   The costs of this action should be paid from the estate.