# CHARLES McINTIRE *v.* EDWIN A. McINTIRE.

# EDWIN A. McINTIRE *v.* CHARLES McINTIRE.

APPEALS FROM, AND IN ERROR TO, THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Nos. 84, 85.  Argued December 8, 1903.—Decided January 4, 1904.

A testator left a residue "to be equally divided between my brothers Edwin and Charles children." At the date of the will the brother Edwin had died leaving six children, five of whom survived the testator. Charles had two children and he and one of his children survived the testator.

*Held* that the residue was to be divided *per capita*.

Counsel was retained to uphold the will at the petition of legatees, including the administrator with the will annexed, and was paid by order of court, the payments being charged by him against the interest of these legatees without prejudice to an application to have them charged against the estate. In the final account, the payments were charged against the estate and his accounts were allowed.

*Held* that the charge was proper.

An order of court was made by consent that the administrator with the will annexed should act as such, but without commission or other charge, the assets being in other hands. When the debts were paid the assets

were transferred to him by another order on his giving a new and larger bond.

*Held* that he was entitled to no commissions notwithstanding the change made by the later order.

Partial distributions are charged against special pecuniary legacies, not against the interest of the legatees in the residue.

Interest properly is charged against an administrator for money which the record shows to be due from him to the estate.

THE facts are stated in the opinion.

*Mr. William G. Johnson* for Charles McIntire:

Division should have been *per stirpes* and not *per capita.* *White* v. *Holland,* 92 Georgia, 216; *Ihrie's Estate,* 162 Pa. St. 369; *Green's Estate,* 140 Pa. St. 253; *Risk's Appeal,* 52 Pennsylvania, 269; *Walker* v. *Griffin,* 11 Wheat. 375; *Records* v. *Fields,* 155 Missouri, 314. Cases cited by the Court of Appeals and on administrator's brief, distinguished, and as to Maryland cases, see *Alder* v. *Beall,* 11 G. & J. 123. *Webb* v. *Blackler,* 2 P. Wms. 383, has been shaken if not entirely rejected. *Henry* v. *Thomas,* 118 Indiana, 23, and see cases cited on p. 30; *Vincent* v. *Newhouse,* 83 N. Y. 505, and cases cited on p. 513; *Balcom* v. *Haynes,* 14 Allen, 204; *Raymond* v. *Hilhouse,* 45 Connecticut, 467; *Lyon* v. *Acker,* 33 Connecticut, 222; *Minter's Appeal,* 40 Pa. St. 111.

*Mr. William Henry Dennis* and *Mr. Charles Cowles Tucker,* with whom *Mr. Henry E. Davis* was on the brief, for the administrator c. t. a.:

Division was properly *per capita* and not *per stirpes.* *Blackler* v. *Webb,* 2 P. Wms. 383; *Bryant* v. *Scott,* 1 Dev. & Bat. Eq. 155, and cases cited; *Scott's Estate; Gwynn's Appeal,* 163 Pa. St. 165; *Howard* v. *Howard,* 30 Alabama, 391; *De Laurencel* v. *De Boom,* 67 California, 362; *Walker* v. *Griffin,* 11 Wheat. 375, distinguished; *Moffit* v. *Varden,* 9 Fed. Cas. 689; *S. C.,* 6 Cranch C. C. 658; *Follansbee* v. *Follansbee,* 7 App. D. C. 282; *Payne* v. *Rosser,* 53 Georgia, 662; *Huggins* v. *Huggins,* 72 Georgia, 825; *Pitney* v. *Brown,* 44 Illinois, 363; *Best* v. *Farris,*

21 Ill. App. 49; *Purnell* v. *Culbertson*, 12 Bush, 369; *McFatridge* v. *Holtzclaw*, 94 Kentucky, 352; *Brown* v. *Brown*, 6 Bush, 648; *Maddox* v. *State*, 4 H. & J. 540; *Brown* v. *Ramsey*, 7 Gill, 348; *McPherson* v. *Snowden*, 19 Maryland, 197; *Thompson* v. *Young*, 25 Maryland, 450; *Brittain* v. *Carson*, 46 Maryland, 186, citing *Lenden* v. *Lenden*, 10 Simons, 626; *Benson* v. *Wright*, 4 Md. Ch. 278; *Alder* v. *Beall*, 11 G. & J. 123, and *Levering* v. *Levering*, 14 Maryland, 30, distinguished; *Allen* v. *Keplinger*, 62 Maryland, 8; *Plummer* v. *Plummer*, 94 Maryland, 66; *Hill* v. *Bowers*, 120 Massachusetts, 135, and cases cited; *Nichols* v. *Denny*, 37 Mississippi, 59; *Crawford* v. *Redus*, 54 Mississippi, 700; *Farmer* v. *Kimball*, 46 N. H. 435; *Campbell* v. *Clark*, 64 N. H. 328; *Burnet* v. *Burnet*, 30 N. J. Eq. 595; *Benedict* v. *Ball*, 38 N. J. Eq. 48; *Macknet* v. *Macknet*, 24 N. J. Eq. 277; *Thornton* v. *Roberts*, 30 N. J. Eq. 473; *Hayes* v. *King*, 37 N. J. Eq. 1; *Budd* v. *Haines*, 52 N. J. Eq. 488; *Stokes* v. *Tilly*, 1 Stockt. 120; *Fisher* v. *Skillman's Ex'r*, 3 C. E. Green, 229; *Bunner* v. *Storm*, 1 Sandf. Ch. 357, citing *Warrington* v. *Warrington*, 2 Hare, 54; *Collins* v. *Hoxie*, 9 Paige, 81; *Seabury* v. *Brewer*, 53 Barb. 662; *Myres* v. *Myres*, 23 How. Pr. 410; *In re Verplanck*, 91 N. Y. 439, and cases cited; *Lee* v. *Lee*, 39 Barb. 172; *Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125; *Ward* v. *Stow*, 2 Dev. Eq. 509; *Waller* v. *Forsythe*, 1 Phill. Eq. 353; *Johnston* v. *Knight*, 117 N. C. 122; *Cheeves* v. *Bell*, 1 Jones Eq. 234; *Lane* v. *Lane*, 1 Wins. 630; *Roper* v. *Roper*, 5 Jones Eq. 16; *Howell* v. *Tyler*, 91 N. C. 207; *Ex parte Leith*, 1 Hill Ch. 151; *Campbell* v. *Wiggins*, Rice Ch. 10; *Allen* v. *Allen*, 13 S. Car. 512; *Perdriau* v. *Wells*, 5 Rich. Eq. 20; *Wessenger* v. *Hunt*, 9 Rich. Eq. 459; *Dupont* v. *Hutchinson*, 10 Rich. Eq. 1; *Seay* v. *Winston*, 7 Humph. 472; *Kimbro* v. *Johnston*, 15 Lea, 78; *Puryear* v. *Edmondson*, 4 Heisk. 43; *Ingram* v. *Smith*, 1 Head, 411; *Rogers* v. *Rogers*, 2 Head, 660. *DeVaughn* v. *Hutchinson*, 165 U. S. 566, distinguished. "Between" means "among." In at least sixteen of the cases cited, *supra*, "between" was used in referring to more than two legatees without indicating a division into classes. And see

cases cited in *Farmer* v. *Kimball,* 46 N. H. 435, on this use of the word.

Extraneous evidence under the circumstances surrounding this case was not admissible to show the intent of a testator.

We submit that such evidence is inadmissible. See *Weatherhead's Lessee* v. *Baskerville,* 11 How. 357; *Wilkins* v. *Allen,* 18 How. 385; *Mackie* v. *Stone,* 93 U. S. 589; *Kaiser* v. *Brandenburg,* 16 App. D. C. 16, and cases cited; *Bunner* v. *Storm,* 1 Sandf. Ch. 357; *Myres* v. *Myres,* 23 How. Pr. 410; 1 Jar. on Wills (5th ed.), pp. 509 *et seq.*

The amount of the interest charged to the administrator is sufficient to sustain the cross appeal. *Shields* v. *Thomas,* 17 How. 5; *Markel* v. *Hoffman,* 101 U. S. 113; *Texas &c. Ry.* v. *Gentry,* 163 U. S. 361.

The allowance of commissions is a matter peculiarly within the province of the Orphans' Court, which has a close-at-hand view of the administration of the estate; and so far as discretion is vested in that court, its exercise is not subject to appeal. *Wilson* v. *Wilson,* 3 G. & J. 201; *Parker* v. *Gwynn,* 4 Maryland, 423; *Sinnott* v. *Kenaday,* 12 App. D. C. 115; 14 App. D. C. 1; *Eversfield* v. *Eversfield,* 4 H. & J. 12. The right to commission is a valuable right. *Richardson* v. *Stanbury,* 4 H. & J. 275.

A court does not charge a fiduciary with interest, unless he has unreasonably detained money or has used it or realized interest on it himself. *Wilson* v. *Wilson,* 3 G. & J. 20; *Handy* v. *State,* 7 H. & J. 42.

Mr. JUSTICE HOLMES delivered the opinion of the court.

These are cross appeals from the Court of Appeals of the District of Columbia. 14 App. D. C. 337. To avoid all questions of form there are also writs or error on the same grounds. The appeal of Charles McIntire is from the overruling of exceptions to the final account of the administrator with the will annexed of the estate of David McIntire, and presents two

questions, one of construction and one of administration outside the terms of the will. The probate of the will already has been before this court. 162 U. S. 383.

The question of construction is the main one. It is whether the children of the testator's brothers, Edwin and Charles, take *per capita* or *per stirpes* under the residuary clause of the following will:

> "January 7th, 1880.
>
> "This is my last will and testament.
>
> "I David McIntire. tin-plate worker, of this city (of) do will, bequeath, or devise, to my nephews, and nieces, that is to say, from July the first. 1st eighteen hundred and fifty-four. 1854
>
> "To the opening of. on reading of this, paper. one thousand three hundred and fifty dollars and sixty-four cents ($1,350.64) is to be calculated at six (6) per cent. interest
>
> "That amount whatever it may be is to be given to each of my brother Edwin's children. The remainder if any, is to be equally divided between my Brothers Edwin and Charles children. David McIntire."

There was an addition and also an earlier document of January 1, 1880, which it is unnecessary to copy. At the date of the will the brother Charles was living and had two sons, Charles and Henry, the latter of whom died before the testator. The brother Edwin had died, leaving six children, one of whom died before the testator. The testator held promissory notes of his brother Charles for $1350.63. The brother Charles also now is dead.

The argument for a division *per stirpes* is this. Earlier in the paper the testator had used the phrase "nephews and nieces," which it would have been natural to repeat had he intended to make a division *per capita*. But instead of that he says "my brothers Edwin and Charles children," which is not very different from "my brother Edwin's children and my brother Charles' children," and orders an equal division "between" them. "Between," if accurately used, imports that not more

than two persons or groups are set against each other, *Ihrie's Estate*, 162 Pa. St. 369, 372; *Records* v. *Fields*, 155 Missouri, 314, 322, and those groups are earmarked and shown to be regarded as groups by naming the parents from which respectively they come. The equality of division is an equality between the groups. See *Hall* v. *Hall*, 140 Massachusetts, 267, 271. This mode of distribution has the recommendation that it follows the rule in cases of intestacy. *Raymond* v. *Hillhouse*, 45 Connecticut, 467, 474. See further *Alder* v. *Beall*, 11 G. & J. 123, explained in *Plummer* v. *Shepherd*, 94 Maryland, 466, 470. But the court is of opinion that the general rule of construction must prevail according to which, in the case of a gift to the children of several persons described as standing in a certain relation to the testator, the objects of the gift take *per capita* and not *per stirpes*. *Walker* v. *Griffin*, 11 Wheat. 375, 379; *Balcom* v. *Haynes*, 14 Allen, 204; *Hill* v. *Bowers*, 120 Massachusetts, 135. The fact that one of the parents was living at the date of the will is deemed sufficient to exclude a reference to the statute of distributions. *Blackler* v. *Webb*, 2 P. Wms. 383; *Bryant* v. *Scott*, 1 Dev. & Bat. Eq. (N. C.) 155, 157. And with regard to the word "between," the will is an illiterate will, and as the popular use of the word is not accurate no conclusion safely can be based upon that. See *Maddox* v. *State*, 4 H. & J. 539; *Brittain* v. *Carson*, 46 Maryland, 186; *Collins* v. *Feather*, 52 W. Va. 107; *Lord* v. *Moore*, 20 Connecticut, 122; *Pitney* v. *Brown*, 44 Illinois, 363; *Farmer* v. *Kimball*, 46 N. H. 435, 439; *Burnet* v. *Burnet*, 30 N. J. Eq. 595; *Myres* v. *Myres*, 23 How. Pr. 410; *Waller* v. *Forsythe*, 1 Phillips' Eq. (N. C.) 353.

The other error assigned on behalf of Charles McIntire is that the court charged the estate with $11,500, fees paid to counsel for services in defending the will against the attack of the said Charles and his father. The amount was paid in different sums by orders of court, in several instances on the petition of the children of Edwin, one of whom was the administrator with the will annexed, and was directed to be charged

against the interest of those children in the first instance, but without prejudice to an application to have it finally charged against the estate. On the allowance of the account it was charged against the estate. We are of opinion that the charge was proper. There is no contest over the amount. It was the proper business and duty of the administrator to defend the will, and he was entitled to a reasonable allowance for what he had to pay in doing so. The only just alternative would be to charge counsel fees as costs against the losing party, which would have been less favorable to the appellant. The general proposition is not disputed, but it is said that in this case the legatees retained the counsel and therefore ought to pay them. The other legatees as well as the administrator no doubt had a share in calling the counsel in. But that did not matter. The services were services to the estate in maintaining the testator's will, they were adopted by the administrator and the usual rule must prevail. It is said that there was no application to change the original order and no chance to be heard against it. But plainly this cannot be true. As observed by the court below, allowing the account changed the order and charged the fees on the estate. Whatever want of formality there may have been, the appellant had the right and opportunity to object and except to the account, as well on this ground as others, and he used it. The precise mode in which the allowance appeared upon the account is not material, but may be explained in a word or two. The payments were made by the solicitors of the parties while they had the assets in their hands, as will be stated in a moment. They rendered their account, crediting themselves with those payments generally. Then they turned over the assets, less these payments and their commissions, to the administrator. In the account of the latter he charges himself only with the net amount received by him, and makes no charge for the counsel fees against the legatees, and thus throws the burden on the residue of the estate.

The foregoing considerations dispose of the appeal of Charles

McIntire. There is a cross-appeal by the administrator from the allowance of certain exceptions to the account. The first error assigned is that he was denied commissions. The reason was this. On February 19, 1885, pending the controversy on the will and other controversies, an order was made by consent of all parties, to the effect, among other things, that Edwin A. McIntire should act as administrator, "but without any allowance for commission or other charge for his services as such administrator," and that the assets should remain under the control of the court (they having been paid into court under another order of the same date, passed in an equity cause). The next year, all debts having been paid except a disputed note, another order was made by consent, turning over the assets to the solicitors of the parties. The funds were managed by the solicitors until the will was established, when on petition of the administrator offering to give an additional bond, the assets were put into his hands on July 7, 1896, upon his filing a bond for $100,000. It is argued that this restoration of the assets to the hands of the administrator with the duty of distribution and the requirement of a new bond, relieved him of the terms of the bargain on which it was agreed that he should act, if that bargain ever was valid. We think it enough to say that we perceive no such change of situation from what was anticipated as should have that result. Whether the bargain was good or bad, the services were, rendered under it, and therefore purported to be gratuitous. The law does not forbid gratuitous services, even in fiduciary relations, and if acts purport to be done gratuitously no claim for payment can be founded upon them at a later date. See *Johnson* v. *Kimball*, 172 Massachusetts, 398, 400, 401.

A partial distribution was made under an order of December 9, 1897, of $2800 to each of the children of Edwin, and of $6022.02 to Charles McIntire. Complaint is made because the sums paid to Edwin's children were charged against the legacies to them instead of against their share in the residue, whereas the payment to Charles was charged to his share in

.the residue, which was all he had. It is said that this mode stops the running of interest on the legacies to the disadvantage of the legatees. But we see no ground for complaint. Of course the liabilities of the estate in the form of legacies as well as those in the form of debts are to be satisfied before the residue exists. In the absence of a definite understanding at the time, partial payments naturally would be taken as working that satisfaction and as stopping the liability of the estate for interest. The same principle applies to another sum which four of the legatees agreed to treat as having been paid to them as stated below.

A third error alleged concerns $500, part of the counsel fees in addition to the sums mentioned above. This was paid upon a petition of Edwin's children, stating that the counsel "had been managing their interests," and under an order directing the same to be charged to their distributive shares without reserving any right to apply to have it finally charged to the estate. We are not disposed to overturn the decision that this payment must be borne by the legatees, as they were content to be charged with it in the order allowing the payment.

The next error assigned is that the administrator was charged with interest on an item of $10,000 from April 18, 1884, to February 25, 1885. This sum was alleged to have been received by the administrator and improperly omitted from the inventory. The matter was referred to arbitrators. In order to avoid a family quarrel, if possible, the four sisters of the administrator agreed to be charged with $2500 each, as on a partial distribution, and gave receipts on February 25, 1885. Thereupon the administrator requested the arbitrators to find that he received and must account for the sum, and they did so. Very probably the matter of interest was overlooked, but the result of the transaction is that the administrator stands charged on the record as owing the estate $10,000 until the time of distribution to the sisters, and of course that he must pay interest at the legal rate. It is not a case of charging interest not earned against an administrator having funds in his

hands as such, but it is a charge against him for money which he ought to have put into his account and held as an identified fund, but did not. The motives which induced his consent to charge himself are immaterial. Whatever they were, the effect of the record is the same.

Finally, the administrator objects to being charged with interest on an item of $1419.73, which he received in 1891. There is perhaps more doubt about this than concerning the more important matters, but we shall not disturb the decree. The assets had been ordered to be paid into court and then had been transferred, as above stated, to the solicitors of the parties as custodians. The administrator did not pay this sum over, but kept it in his own hands.

*Decree affirmed.*