CASE 95—PROCEEDING BETWEEN WITTIE E. HUGHES AND OTHERS, AND EDWARD HUGHES, TRUSTEE, AND EXECUTOR AND OTHERS, FOR CONSTRUCTION OF A DEVISE.—OCTOBER 11.

## Hughes, &c., v. Hughes, &c.

APPEAL FROM JEFFERSON CIRCUIT COURT, CHANCERY · DIVISION, NO. 1— SHACKELFORD MILLER, JUDGE.

FROM THE JUDGMENT, EDWARD HUGHES AND OTHERS APPEAL. REVERSED.

WILLS—BEQUESTS—PER STIRPES OR PER CAPITA.

Under a bequest of property "to be equally divided between the children of B. and J." brothers of testators, the nieces and nephews take per capita, and not per stirpes.

FORCHT & FIELD AND D. W. BAIRD, ATTORNEYS FOR APPELLANTS.

### POINTS AND AUTHORITIES.

1. It is obvious from the language of the will that the testator desired a per capita distribution among the children of Barney and James Hughes, and the authorities are equally clear that the court should so hold. Brown's Exor's v. Brown's Devisees,, 6 Bush, 648; Purnell v. Culbertson, 12 Bush, 369; McFatridge v. Holtzclaw, 94 Ky., 352; vol. 2, Jarman on Wills (6th Ed.), side p. 1051; Woerner on the American Law of Administration (1899), vol. 2, side p. 899; Britton v. Miller, 63 N. C., 268; Burnett v. Burnett, 30 N. J., Eq., 595; Payne v. Rosser, 53 Ga., 662; McIntyre v. McIntyre, decided by the Supreme Court of the United States on January 4, 1904 (Advance Sheets, L. Ed., No. 5, p. 196.)

2. The court, in the interpretation of wills, will make every artificial rule yield to the rule of the testator's intent, and will follow that intent when it can be ascertained. Fields v. Fields, 93 Ky., 620; Bethel v. Major, 24 Ky. Law Rep., 398.

3. The construction adjudged by the lower court is unnatural and in conflict with the plain and clear terms of the will itself.

4. It is strained, forced and unnatural to say that by the use of the word "between".and the use of the word "share" instead of "shares," the testator intended a *per stirpes* distribution.

5. To avoid a per capita distribution, the will should clearly indicate a *per stirpes* distribution.

GIBSON, MARSHALL & GIBSON, FOR APPELLEES.

1. If a per capita distribution is made, the property devised must be divided into nine shares, and the children of one brother will get six shares, while the children of the other brother will get three shares. The testator provided that it should ·be divided "equally" between the children of his two brothers. He did not describe their interest by "shares," but by the word "share," showing conclusively that he had in mind only two shares, one for the children of James, and one for the children of Barney, Hughes.

2. The tie that bound the testator to these children was the affection he had for his two deceased brothers, James and Barney. The children were not spoken of by name or even as nephews and nieces, but as the members of two classes of families. Had the brothers been living the portion of the testator's estate coming to them would doubtless have been divided equally between them. There is nothing in the will to indicate a purpose upon the part of the testator to have the children take more than they would have received had their respective fathers been living. As said by the chancellor "they took as classes representing their respective fathers, and not as individuals."

### AUTHORITIES.

Franklin v. Franklin, 91 Tenn., 123; Sutterfield v. Mayes, 11 Humphreys, 58; Record v. Fields, 155 Mo., 314; Leary's Appeal, 162, Pa., 369; Hughes v. Hughes, 12 B. M., 115; Wells v. Wells, 85 Ky., 492; Bradley v. Skillman, 3 Ky. Law Rep., 734; Fields v. Fields, 93 Ky., 621; Crozier v. Cundall, 99 Ky., 211; Purnell v. Culbertson, 12 Bush, 371; Bethel v. Major, 24 R., 398.

OPINION OF THE COURT BY CHIEF JUSTICE BURNAM—REVERSING.

We are asked to decide upon this appeal whether the nephews and nieces of Edward Hughes take *per capita* or *per stirpes* under the seventh clause of his will, which reads as follows::

"Being in good health, sound mind and of a disposing disposition, I make this my last will and bequest.

"First. I desire that all my just debts and funeral expenses shall be paid and that a suitable monument be erected over me to cost not less than fifteen hundred dollars.

"Second. I give to Mrs. Elizabeth Jenkins three Louisville Railway 5 per cent. bonds, par value one thousand dollars each, or their value—also my cottage and lot on the east side of 18th, between Main and Rowan Sts. in this city.

"Third. I give to F. R. Bishop my diamond studs,—collar buttons and sleeve buttons, also my gold watch.

"Fourth. I give to my old friend, Wm. Shryock, three thousand ($3,000.00) dollars, in cash—I also release him from all money that he may owe me at the time of my death and the same must be cancelled. I also give him the use during his natural life of the sum of five thousand ($5,000.00) dollars, free from all security, nor is he to be charged interest of any kind on the above amount. Should any of the $5,000. remain at the time of his death, it is to be returned to my estate for distribution as shown later in this will.

"Fifth. I give to my nephew Francis Bernard Hughes, son of James Hughes, my diamond fire badge, and all other badges and medals or souvenirs that may have been presented to me—also all my real estate that I may possess at the time of my death that has not previously been given away in this writing.

"Sixth. I give to my niece, the daughter of Pat Hughes, the sum of one hundred ($100.00) dollars.

"Seventh. After the above bequests have been complied with, the remainder of my estate shall be equally divided into two parts—one part (or one-half of the entire amt.) I give to my nephew Francis Bernard Hughes, the son of

my brother, James Hughes, and the other half is to be equally divided between the children of Barney and James Hughes, with the exception of Francis Bernard Hughes—the share that may be due the heirs of Barney Hughes is to be given to the Fidelity Trust Co., of Louisville, Ky.—and the widow of Barney Hughes is to have the net income of same as long as she remains his widow. Should she die or cease to be his widow, the trust is to be equally divided between the children of my brother Barney Hughes."

James and Barney Hughes were both dead at the date of the execution of the will. The family of James Hughes consisted of four children, two sons and two daughters, one of whom, Francis Bernard Hughes, has no interest, in this controversy. The family of Barney Hughes consisted of a wife and six children, four sons and two daughters. Appellants, the children of Barney Hughes, contend that it was the intention of testator to devise the residuum of his estate per capita between his nine nephews and nieces, whilst the children of James Hughes insist that it should be divided *per stirpes*. Numerous authorities are cited by counsel on both sides which seem to sustain these respective contentions. But whatever may be the rule in other States, it seems not to be an open question in this jurisdiction. In Joseph Brown's Executor v. Joseph Brown's Devisees, 6 Bush, 648, the court had for construction the following clause in the will of Joseph Brown: "The rest and residue of my estate I will and bequeath to the descendants of my three uncles, Benjamin, William and Thomas Brown. My three uncles above named are all dead, and their children or descendants are unknown to me, at least some of them. My desire is that this bequest shall go to such of their children as are living, and where a child or either of the three has died leaving children, the children of such deceased

child shall take such part as their parent would take if alive." One of the uncles left three children, another four, and the other seven. The question was whether they took per capita or per stirpes. It was decided that the fourteen children were each entitled to an equal part of the estate which passed under this will. This case was followed by Purnell, etc., v. Culbertson, 12 Bush, 369. In that case the clause under consideration reads as follows: "At her death, I wish the real estate and such personal property as my wife may not have disposed of, divided equally between my nephew, Charles Culbertson, of this county, Mattie Ervine, Ettene Case and the two children of Thomas T. Purnell, nephews and nieces of mine.". The circuit court had decided that this devise went *per stirpes*. Upon appeal the judgment of the lower court was reversed, this court holding that the property should be divided per capita between the devisees. In the opinion in that case the court says: "The words 'equally to be divided,' when used in a will, mean a division per capita, and not *per stirpes*, whether the devisees be children and grandchildren, brothers and sisters, nephews or nieces, or strangers in blood to the testator." This case was followed by McFatridge v. Holtzclaw, 94 Ky., 352, 15 R., 312, 22 S. W., 439. The provision under consideration was as follows: "After the death of my wife I wish my property disposed of and equally divided between the heirs of my brothers and sisters share and share alike as though my brothers and sisters were alive." At testator's death, his own brothers and a sister were alive. One brother had four children, the other had two, and the sister one. The question was how the children of the brothers and sister took—per capita or *per stirpes*. It was decided that the property should be divided among them per capita, and the judgment of the circuit court was reversed. In the recent case of

McIntire v. McIntire, 192 U. S., 116, 24 Sup. Ct., 196, 48
L. Ed., 369, the clause under consideration read as follows:
"The remainder, if any, is to be equally divided between
my brothers Edwin and Charles' children." At the date of
the will, Charles was alive, and had two sons, one of whom
died before testator, Edwin, had died, leaving six children,
one of whom died before the testator. The court said: "The
argument for a division *per stirpes* is this: "Earlier in the
paper the testator had used the phrase 'nephews and nieces,'
which it would have been natural to repeat, had he intended
to make a division per capita. But instead of that, he says
'my brothers Edwin and Charles' children,' which is not very
different from 'my brother Edwin's children and my brother
Charles' children,' and order an equal division 'between'
them. 'Between,' if accurately used, imports that not more
than two persons or groups are set against each other, and
those groups are earmarked, and shown to be regarded as
groups by naming the parents from which, respectively, they
come. The equality of division is an equality between the
groups. This mode of distribution has recommendation that
it follows the rule in cases of intestacy. But the court is of
the opinion that the general rule of construction must pre-
vail, according to which, in the case of a gift to the children
of several persons described as standing in a certain relation
to the testator, the objects of the gift take per capita, and
not *per stirpes*." The case of Fields, etc., v. Fields, 93 Ky.,
619, 14 R., 865, 20 S. W., 1042, is not in conflict with the
other Kentucky cases cited above, as the opinion in that
case rested in a large degree upon other clauses of the will
showing an intention on the part of testator that the
devise should go *per stirpes,* and not per capita.

We have reached the conclusion that the half of the resi-
duum of the estate of testator devised to the children of his

brothers Barney and James Hughes should be divided per capita, excluding Francis Bernard Hughes, or, in other words, the children of Barney Hughes are entitled to six-ninths of this remainder, subject to the life estate of their mother, and the three children of James Hughes—J. E. Hughes, Mary Ellingsworth, and Vannie I. Whallen—are entitled to the remaining three-ninths.

For reasons indicated, the judgment is reversed, and cause remanded for proceedings consistent with this opinion.