JONES, ADMR., APPELLEE, *v.* LEWIS ET AL., APPELLANTS, ET AL., APPELLEES.

(No. 127—Decided July 7, 1941.)

*Mr. Benner Jones* and *Mr. Frank DeLay,* for appellee, Benner Jones.

*Mr. Charles H. Jones,* for appellants.

*Mr. E. E. Eubanks* and *Mr. Owen M. Roderick,* for appellees.

METCALF, J. This case is in this court on rehearing on an appeal from the judgment of the Probate Court of Jackson county, Ohio, construing the last will and testament of Owen D. Davies, deceased, and the determination and distribution therein made. The action in that court was predicated upon a petition and an amendment and a revised amendment thereto filed by the administrator *de bonis non* with the will annexed of the decedent, wherein the administrator petitioned the court to determine the legatees and distributees of said estate and their respective interest in certain personal property then in his hands and asking for an order for distribution in kind or sale of the balance of said property, together with a separate answer of the defendants Sarah K. Coffman and James H. Darling, and the answer of the guardian *ad litem* for William Davies, a minor defendant.

The notice of appellants states that the appeal is on questions of law and fact. Neither the petition nor the answers referred to nor the will which is before this court allege or show any involvement of a trust in respect to said estate. Neither is a proceeding by an executor or other fiduciary, asking the direction or judgment of the court respecting an estate which does not involve a trust, a chancery case. This action is not a chancery case and is not appealable to this court on questions of law and fact. Section 6, Article IV, Ohio Constitution; *Crowley, Admr.,* v. *Crowley,* 124 Ohio St., 454, 179 N. E., 360; *Whiting* v. *Bertram et al., Exrs.,* 51 Ohio App., 40, 199 N. E., 367; *McDiarmid, Trustee,* v. *McGrew,* 43 Ohio App., 449, 183 N. E., 92; 2 Ohio Jurisprudence, 128, Section 110. The notice of appeal will therefore be amended by striking therefrom the words "and fact" and the case is retained in this court on an appeal on questions of law.

One of the issues involved herein and strongly urged

by appellants is that that part of the judgment of the Probate Court construing the will herein is *res judicata*. At the rehearing before this court appellants and the administrator joined in offering the record of cause number 5643 in the Common Pleas Court of Jackson county, Ohio, alleged in the petition as construing the will herein involved, which offer was taken under advisement by this court pending the determination as to whether the appeal is on questions of law and fact or questions of law. The plaintiff below apparently overlooked the fact that there was an answer filed by the guardian *ad litem* denying all the allegations in plaintiff's petition and therefore placed the burden upon plaintiff in the trial court to substantiate the issue of *res judicata*. There is nothing in the record to indicate that the Probate Court ever had the former adjudication before it or that it gave it any consideration whatever. There is a bill of exceptions filed in this case which precludes this court from ordering the preparation and settlement of a bill of exceptions as provided in Section 11564, General Code. Neither is it apparent from the record nor was there any showing made that the failure to include the record of the former adjudication occurred through accident or error in order to authorize this court under Section 11572*a,* General Code, to either correct the bill of exceptions or remand it to the Probate Court for that purpose. Having determined that this case is before us on questions of law, and a bill of exceptions having been filed, the offer in evidence of the record of the former proceeding in the Common Pleas Court is refused.

However, in order that no injustice may be done to any of the parties hereto this court has given consideration to the question as to whether or not the former adjudication by the Common Pleas Court of

Jackson county is *res judicata* here had it properly been before the court. The parties in whom the remainder of the stock in question vested, or at least the vast majority of them, were not parties to this former adjudication and do not stand in privy with those who were made parties and their interest is such that they are not precluded from asserting their rights herein. For that reason should the issue of *res judicata* have been properly before the Probate Court and this court on appeal we would have been forced to hold that the parties to this action are not bound thereby.

Appellants contend that the Probate Court improperly construed the will of the testator with reference to certain stock of the Globe Iron Company and the income derived therefrom and that the court erred in its finding and order of distribution.

Owen D. Davies, died testate on October 4, 1899, his will being admitted to probate in Jackson county. Both at the date of the execution of the will and at the time of his decease testator had seven living children and two deceased children. The two children that had predeceased testator left children surviving them who were living at the time of the death of testator. Testator at the time of his death owned certain real estate and personal property and among the personalty was one share of stock of the Globe Iron Company of the par value of $1,000 which has now grown to twenty shares of the par value of $1,000 each and which together with some dividends is the subject-matter of this action. All the other property of testator was disposed of and distributed during the administration of his estate approximately forty years ago.

In the first part of the will testator gave to his "children and their legitimate children, being heirs to my sons and daughters, of which I have nine," naming them, "all of my real estate and personal

property, that I may own at the time of my death, to my said enumerated heirs excepting my son John D. Davies, the amount to be divided equal between the other eight heirs." He further provided if his real and personal property exceeded $1,600 that his excepted son is to share in all above said sum, using the words "is to be divided equal between the nine heirs." Testator then says "Also Owen D. Davies and Jane Jenkins (deceased) their heirs is to receive their parents share when they become of age if living to become of age, if all the heirs or any of the heirs of my deceased children should die before they become of age, then their share or shares is to be divided between my legitimate children and their heirs." Then follows the clause which is the subject of controversy here and which reads:

"Also my stock in the Globe Iron Company is to remain as a stock, to my living legitimate children, all of the dividends (if there be any) from said stock shall be divided equally between my said living children, after all my children are dead thence said stock is to go to my children's heirs."

It is the duty of the court to determine to whom this stock is to be distributed and in what proportions. The Probate Court found the true construction of the will to be that the first part thereof hereinabove set out constituted all of the operative facts pertaining to the disposition of the property of the testator and that the stock in question was included therein, ignoring *in toto* the clause just hereinabove quoted wherein the Globe Iron Company stock is mentioned. In other words, the Probate Court held that when Owen D. Davies devised all of his real estate and personal property under the first clause of the will he included the stock therein and that his further reference thereto was of no force and effect insofar as its disposition is concerned. With this conclusion we cannot agree.

In construing the will we are guided by well known and elementary principles of law. The intent of the testator is to be gathered from the whole will, giving to the language used its plain and ordinary meaning. If the whole will can be considered as to give force and effect to every part thereof it must be so construed that all of its provisions may stand and no part will be invalidated or set aside except by clear and decisive terms. The question always before the court is what did testator mean by the words which he actually employed. This meaning must be gathered from the whole will, that is, from all of the provisions considered in the light of every other provision, as an entirety. The construction given to any part of the will should conform to its general scope and purpose, each of the parts being construed with the others to make a consistent whole.

With these fundamental principles in mind let us examine the will to determine first, what the testator intended to do and what he did do by way of disposing of the Globe Iron Company stock. Testator made an entirely different disposition of this stock than he did of all his other property. He treated it in a different light. He singled it out and with clear and definite statements separated the income from the *corpus*. He created a life estate in the income of the stock. He created a remainder in the principal and directed where that remainder was to go. One trained in the preparation and drafting of wills undoubtedly would have prepared testator's will, keeping in mind the desire of the testator, in the reverse order in which the will is written, but this does not take away the clear intention of the testator even though he may not have placed items in their common, accepted chronological order. For instance, testator directs that his funeral expenses be paid, a monument provided, etc.,

at the end of the will. He gave his household goods to his daughters only in the very last part of the will. It would be just as logical to say that testator meant nothing by that clause as to ignore the clause disposing of the stock. Certainly it is clear from the will that the testator intended, first, that the Globe Iron stock was to remain as a stock, that is kept intact, not sold or distributed but to remain in the same status it was upon the death of testator; second, it was to so remain for the purpose of providing his living children with all the dividends thereof equally and, third, that after all his children were dead the stock was to be distributed to his children's heirs. The first and second provisions were not difficult to determine nor to carry out. They simply had only to hold the stock, collect the dividends and pay them over to the living children of testator. As each child died the proportionate part of the remaining children in the dividends increased until June of 1936 when the last child of testator died. The third part of this provision is more difficult and is that part which has caused the litigation herein and has resulted in different constructions by various courts from time to time before whom the question was presented. What did the testator mean by the use of the phrase "my children's heirs"? Did he use heirs in its strict and technical meaning—The person or persons appointed by law under the statute of descent and distribution to succeed to the estate in case of intestacy, and in the sense that no man has any heirs at law while he is living—or did he use it in the sense of expressing his children and grandchildren?

The Supreme Court in the case of *Jones* v. *Lloyd*, 33 Ohio St., 572, in the third paragraph of the syllabus said:

"The term *heirs*, when used in a will, is flexible, and should be so construed as to give effect to the manifest

intention of the testator as ascertained by a due consideration of all the provisions of the will."

The court in its opinion says the sense in which the term heir is used in a will is always open to inquiry and further stated that it had no doubt that by his heirs the testator meant his next of kin whether children or brothers and sisters.

The Supreme Court in the case of *Cultice* v. *Mills*, 97 Ohio St., 112, 119 N. E., 200, approved and followed *Jones* v. *Lloyd, supra,* the second paragraph of the syllabus reading:

"Where a testator devises real estate to a son during his natural life and to his heirs, and in other provisions of the will the word 'heirs' is used by the testator in the sense of 'children,' the word 'heirs' in the devise to the son should be held to mean 'children,' and not to have been used in its technical sense to designate anyone capable of inheriting."

We are not unmindful of the law as laid down in the second paragraph of the syllabus of *Holt* v. *Miller,* 133 Ohio St., 418, 14 N. E. (2d), 409, reading as follows:

"Where the term 'heirs' as used by a testator is of doubtful import, it should be accorded its usual technical meaning."

In that case the court said on page 421:

"A reading of the entire will fails to throw any light on the precise meaning the testator intended to ascribe to the word 'heirs,' and in this respect the instant case differs from *Cultice* v. *Mills,*" *supra.*

In the case before us a reading of the entire will does throw light on the precise meaning the testator intended to ascribe to the word heirs, and in this respect the instant case differs from *Holt* v. *Miller, supra.*

The intention of testator and the meaning he gave to the word heirs as gathered from a reading of the entire will leads us to the conclusion that when he used

this term, in the sense of his heirs, he meant his children and, in the sense of his children's heirs, he meant his children's children or testator's grandchildren.

Let us look at the will. Testator in the first part of his will when he was unquestionably referring to the children of his deceased children used the phrase "being heirs to my sons and daughters." Further testator, after he had named all of his children both living and dead, referred to them as his above "enumerated heirs." Further testator after he had excepted out of the first $1,600 of his estate his son John stated (referring to the first $1,600) that it was "to be divided equal between the other eight heirs," unquestionably meaning the other six of his living children that he had enumerated and the children of his two deceased children. Further in the will testator makes the provision that his estate in excess of $1,600 "is to be divided equally between the nine heirs," meaning all of his seven living children and the children of his two deceased children. Testator further makes provision in referring to his two deceased children that "their heirs is to receive their parents' share," clearly an indication that he used the word heirs as his grandchildren because he specifically names their parents. And further he made provision that if all the heirs or any of the heirs of his deceased children should die before they arrive at the age of majority their share was to be divided between his "children and their heirs." Again clearly setting forth the same meaning of heirs as he used in the first dispositive clause.

In the case of *Kuester* v. *Yoeman,* 14 C. C. (N. S.), 264, 22 C. D., 476, affirmed without opinion *Yoeman* v. *Kuester,* 88 Ohio St., 592, 106 N. E., 1087, the first paragraph of the syllabus reads:

"The word 'heirs' where used by a testator having

living children will be regarded as synonymous with children.''

It is apparent to us that testator in referring to heirs meant his children and his grandchildren and since he used this term with a definite and rational intention or meaning we should give the same construction and meaning to the use of this word in the clause disposing of the stock, especially since it does not appear that they are used to express a different meaning or intention. *Cultice* v. *Mills, supra.*

It is our opinion that testator in using the words ''to my children's heirs'' intended that the *corpus* of the stock should vest in his grandchildren and as a class.

It is said in 28 Ruling Case Law, 261, Section 234:

''When there is a gift to a number of persons who are united or connected by some common tie, and it is clear that the testator was looking to the body as a whole rather than to the members constituting the body as individuals and that he intended that if one or more of that body died in his lifetime the survivors should take the gift between them, the gift may be construed as one given to them as a class. The general rule therefore is that a gift to a number of persons not named, but answering a general description, is a gift to a class. This general description may be due to their possessing some common attribute such as bearing a common relationship towards each other or the testator, as, for example, that they are all children or grandchildren of the testator, or of some other designated person.''

On page 698 of Volume 41, Ohio Jurisprudence, Section 582, it is stated that:

''Classes may be designated by the terms heirs, children, grandchildren, * * * and the like. A gift to persons not named, but answering to a general description,.

is usually a gift to them as a class * * *. A devise to the children of another person is ordinarily, although not invariably, a gift to a class.''

It is necessary to determine when the stock vested in the children of testator's children. In the case of *Linton* v. *Laycock,* 33 Ohio St., 128, in the third paragraph of the syllabus we find:

''The law favors the vesting of estates, and in the construction of devises of real estate, the estate will be held to be vested in the devisee at the death of the testator, unless a condition precedent to such vesting is so clearly expressed that the estate can not be regarded as so vested, without directly opposing the terms of the will. To this end, words of seeming condition will, if they can bear that construction, be held to have the effect of postponing the right of possession only, and not the present right to the estate.''

In 16 Ohio Jurisprudence, 483, Section 103, it is stated:

''The law favors the vesting of estates, and in cases of doubt or ambiguity in the language employed in creating a remainder, a construction is favored that will make the remainder a vested one.''

A long line of decisions are quoted, an examination of which shows that they support the text.

On page 487, Section 106, of this same volume it is stated:

''It is the general rule that, where a remainder is to all persons of a specified class and not merely to specified persons of a class, they take a vested interest. * * * When there is a member of the class in being at the time of the limitation taking effect, and when a member of the class thereafter and before the termination of the particular estate comes into being, the remainder vests at once and will open to let in

after-born members of the class if any such appear before the termination of the particular estate.''

It has been argued in this case that no child or heir of testator's children will be permitted to take the remainder in the stock except such as are *in esse* at the time of distribution. This rule applies generally to those cases where the postponement of the period of distribution is for reasons personal to the devisee or where the language clearly indicates an intention that the remainder is to vest only in such members of the class as survive the period of distribution.

''Where the enjoyment of the estate or the period of distribution is postponed for the convenience of the funds of the estate and not for reasons personal to the devisees, the remainder is vested. * * * The possibility of after-born children coming into the class does not interfere with the operation of this rule.'' *Thomas* v. *Thomas,* 247 Ill., 543, 546, 93 N. E., 344.

The rule that the gift of property to a class of persons, distributable at a time subsequent to the death of the testator, includes only such members of the class as are in being at the time appointed for the distribution does not apply where there is nothing to show that the postponement is for any other reason but to let in a life estate. *Thomas* v. *Thomas, supra.*

The children of testator never owned this stock, they had no title to it, they held only a life estate in the dividends, and since from a reading of the whole will testator intended that the remainder should vest in his grandchildren, and the law in Ohio as well as other jurisdictions favors the vesting of estates, it is our conclusion that the *corpus* of the stock vested in the grandchildren at the time of testator's death. The stock having vested in the grandchildren would a respective share divest upon the death of one of them prior to the time appointed for distribution?

The last child of testator having died June 21, 1936, this date fixed the time for ascertaining the members of the class to whom distribution of the stock should be made. Some of the grandchildren of testator had died intestate leaving children but no spouse. Some of them had died testate having by their wills bequeathed their property to others than lineal descendants of Owen D. Davies. The remainder having vested in these grandchildren at the time of the death of testator would their respective interest lapse or would it pass to their representatives?

41 Ohio Jurisprudence, 708, Section 593, discusses this subject and reviews the law in Ohio as being "on the death of the children previous to the period for distribution, their shares will go to their respective representatives." Our Supreme Court in the case of *Linton* v. *Laycock, supra,* is authority that on the death of these grandchildren prior to the death of the last child of testator their respective interests passed to their representatives. Where the devise to a class vests immediately upon the death of testator it is attended by all of the incidents of a vested estate, and consequently the shares of all members of the class in existence at that time, but dying before the period fixed for the ascertainment of the members thereof, do not lapse but devolve upon their appropriate representatives. L. R. A. 1917C, 527; *Wiley, Exr.,* v. *Bricker,* 21 C. C., 109, 11 C. D., 429.

Under the common law, vested remainders were always descendable, devisable and alienable, and since 1932 we find expression in the statute law of Ohio reflecting the common trend that all remainders, whether vested or contingent, executory interest, and other expectant estates are descendable, devisable and alienable in the same manner as estates in possession. Section 10512-4, General Code.

We are therefore of the opinion that, the stock having vested in the grandchildren, upon their death prior to the death of the last child of testator their respective interest passed, if they died intestate, under the laws of descent and distribution effective at the times of their respective deaths, to their heirs-at-law and as to the ones who died testate to their legatees.

In determining whether or not the beneficiaries take the remainder of the stock *per capita* or *per stirpes* the controlling factor is the intention of the testator, which can be reached only by the interpretation of the language he used as applied to all the surrounding circumstances and the conditions present in the mind of the testator at the time the will was written. *Mooney, Gdn.,* v. *Purpus, Exr.,* 70 Ohio St., 57, 70 N. E., 894. When the testator disposed of his property other than his stock he was specific in his statement that he wanted the children of his deceased children to receive their parents' share. He uses no such words in the clause disposing of the stock, nor does he say anything to indicate that his grandchildren are to be treated other than equally. As between his living children and his grandchildren he did have a choice and so expressed it. His will indicates that he had a correct knowledge of distribution *per stirpes* and *per capita.* He not only wanted his seven living children treated alike but he had in mind and so expressed himself that his two deceased children were to be counted in and their share go to their respective children. He carried this thought of equal treatment among his living children into the disposition of his stock making it specific that the dividends were to go only to those who were in being. Throughout his will testator evidences a desire to treat all those in the same degree of consanguinity equally.

With the knowledge testator had of the way his

property would go in the event he died intestate as expressed in the will and having so clearly set forth the distribution of *per stirpes* under the first dispositive clause insofar as his grandchildren are concerned, if he had intended the stock to have gone to his children's children in that manner he would in our opinion so have expressed it. As has been said by our Supreme Court on numerous occasions and more recently in the case of *Holt* v. *Miller, supra,* the intention of the testator should be ascertained from what he has foreborn to say as well as what he has said. We think it significant that testator was so desirous that all his living children be treated alike and that they should receive the full benefit of the income of this stock that he directed it paid only to those who were living and postponed the distribution of the *corpus* until the last one was dead. As to the remainder, in our opinion, he thought of his grandchildren as a class and wanted them to enjoy equally this stock after all his children were dead.

As a general rule, where a testator has left undetermined the proportions in which his beneficiaries are to take, the courts of Ohio, favoring equality, will direct the distribution to be *per capita* rather than *per stirpes,* but if the gift is substitutional, as where children are to take their parent's shares, they take *per stirpes.* 41 Ohio Jurisprudence, 709, Section 594. In dealing with the shares of his estate to go to the children of Owen D. Davies and Jane Jenkins, testator expressly provided that the heirs of these two deceased children should receive "their parents' share," unquestionably having in mind that there was to be substitution, *i. e.,* a *per stirpes* gift, as covered by the Ohio Jurisprudence rule above set forth. Since the testator did not use a similar description of "substitution of heirs" in the clause disposing of the stock

it must follow that he contemplated "*per capita* rather than *per stirpes* distribution." This may appear to create an inequitable basis for distribution but if recognition is given to the testator's express language regarding substitution at one point in the will and for failure to use equivalent language in another place in dealing with the Globe Iron stock no other conclusion seems to be permitted.

As to whether members of a class take *per capita* or *per stirpes* the general rule is that a devise to a class, such as "all my nephews" and the like, calls for a *per capita* distribution. *McIntire* v. *McIntire*, 192 U. S., 116, 48 L. Ed., 369, 24 S. Ct., 196, Mr. Justice Holmes delivering the opinion in *McIntire* v. *McIntire, supra,* on page 121 said:

"But the court is of opinion that the general rule of construction must prevail according to which, in the case of a gift to the children of several persons described as standing in a certain relation to the testator, the objects of the gift take *per capita,* and not *per stirpes.*"

Testator having designated the class to which the remainder of the stock was to vest, his grandchildren, they would take the stock *per capita* and not *per stirpes.* Of course, the legal representatives of any deceased grandchild would take *per stirpes,* keeping in mind that it is not the will of Owen D. Davies that controls the succession to them.

It is therefore our conclusion that the legal title of the Globe Iron stock vested in testator's grandchildren as a class at the time of testator's decease, and that this stock or the proceeds thereof together with the accrued income thereon now in the hands of the administrator should be divided into parts equal in number to the testator's grandchildren, living and dead, and that each living grandchild should receive one of

such parts or *per capita,* and that the shares of each deceased grandchild should be distributed *per stirpes* to his or her heirs at law under the law of descent and distribution in effect at the time of the death of such grandchild or to his or her legatees in the event said grandchild died testate.

It follows that the judgment of the Probate Court is reversed and cause remanded for further proceedings according to law.

*Judgment reversed.*

GILLEN, P. J., and McCURDY, J., concur.