Annie Aletta Elwell Moffett, Respondent, *v.* Mary S. Elmendorf et al., Respondents, and Pierrepont H. Duryea et al., Appellants.

1. Will — Devisees as Tenants in Common and not as a Class. Where a clause of a will devises specific realty to a number of persons by their individual names, giving an equal share to each, without the use of any word applying strictly to a class, or anything requiring a class to satisfy the scheme of the will, the testator is deemed to have intended to make the beneficiaries tenants in common, and that they should take distributively and not collectively; and, consequently, lapsed devises under such clause will go into the residuum and not to the survivors.

2. Provision for Testator's Wife. Provisions for the benefit of the testator's wife should be construed liberally in her favor, and a revocation of a prior devise to her, which would render the provision for her of less value than her rights under the statute, can be effectual only by express words, or by clear and undoubted implication.

3. Residuary Clauses — Construction in Favor of Wife. Where the general purpose of the will of a testator having no near relatives is to provide for his wife, a clause giving her all the real estate, " except the portions thereof hereinafter otherwise given or disposed of," followed by specific devises to others, is to be deemed to cover lapsed specific devises, in preference to a subsequent clause, apparently inserted as a safety clause against remote contingencies and the possibility of partial intestacy, by which the residue of the real estate, " if any there prove to be," is given " to those who may be my heirs at law at the time of my decease."

*Moffett* v. *Elmendorf*, 82 Hun, 470, affirmed.

(Argued March 9, 1897; decided April 20, 1897.)

APPEAL by six defendants from a final judgment rendered
at a Special Term of the Supreme Court in the first judicial
department and entered December 24, 1894, with a notice of
intention to bring up for review an interlocutory judgment
rendered at Special Term June 26, 1894, and an order of
General Term, made December 14, 1894, affirming the inter-
locutory judgment.

This action was brought for the partition of certain lands
situate in the city of New York, of which Samuel Bowne
Duryea died seized on the sixth of June, 1892. He left a
wife, Mrs. Kate Duryea, but no descendants, having never
had any children. He also left two brothers of the half-
blood, children of the same father, Pierrepont and Harmanus
Duryea, and three cousins named King, who were his only
heirs of the whole blood of his mother. His estate consisted
of personal property worth nearly $100,000 and many differ-
ent parcels of real estate, worth in the aggregate about
$800,000.

On the 18th of June, 1877, he made his last will, the first
and second clauses of which are as follows, viz.:

" *First.* I give to my beloved wife, Kate Duryea, all my
personal property and estate not herein otherwise bequeathed,
unless in the contingency of my surviving her, or of her and
my decease on the same day, or by occasion of the same wreck
or casualty proving fatal to both, and in that case I bequeath
said personal estate to my next of kin. The provisions of
this will, in favor of my wife, are made by me and are to be
accepted by her in lieu of all claims of dower in my real estate
or any portion thereof.

" *Second.* All my real estate, except the portions thereof
hereinafter otherwise given or disposed of, I give in like
manner to my said wife, if I leave no issue, but if I leave any
children living or after born, or the descendants of any deceased
child, I give the real property in this clause devised to my
wife and such issue in equal shares, that is, each child, the
representative of each deceased child, as a class, and my wife,
are severally and respectively to take equal shares therein."

By the third, fourth and fifth clauses, he made provision for his father, his two half-brothers and his aunt Sarah A. Duryea.

The following is the sixth clause, viz.:

"*Sixth*. I give and devise to my aunt Catherine Elwell and my cousins, Mary S. Elmendorf, John D. Elwell, Joseph S. Elwell, Cornelius A. Elwell, Annie A. Elwell, James H. Elwell and Sarah E. Elwell (each to take an equal share therein), my lots on the southerly side of Sixtieth street, between First avenue and Avenue A, in the city of New York; also my lots on the southerly side of Sixty-first street, between First avenue and Avenue A, in the city of New York; also my lots and premises now or hereafter known as No. 276 Mott street, in the city of New York, and also my house and lot now or heretofore known as No. 143 Mercer street, in the city of New York."

By the seventh clause, he directed his executors to sell certain lands and divide the proceeds equally between nine religious, charitable and benevolent corporations, and provided that, if "any of such legatees shall have ceased to exist, or shall be unable to take in whole or in part, or if, for any cause, the bequests to one or more of them shall fail to be effectual, either in whole or in part, the sum or sums bequeathed to them, respectively, shall to that extent be divided equally among those competent to take, and as to whom no such impediment exists."

The eighth clause is in these words, viz.:

"*Eighth*. I give to my issue (if any me surviving, or, if I leave no such issue), then to the Brooklyn Children's Aid Society of the City of Brooklyn, all my lots situate on Clinton street, Bush street, Leonard street, Grinnele street, Richard street, Sullivan street, Walcott street and King street, all situate in the Twelfth ward of the city of Brooklyn, as the wards are now numbered."

By the ninth clause he gave to Thomas Cumberson, designated as his "faithful friend," the sum of $5,000, and to each of his servants $200.

The tenth clause is as follows, viz.:

"*Tenth.* All the residue of my real estate (if any there prove to be) I give and devise to those who may be my heirs at law, at the time of my decease, and in the same proportion in which they would have taken if, as to such residue, I should have died intestate."

By the eleventh clause he appointed six executors, provided for their compensation and gave them certain directions in relation to the management of his estate, and by the twelfth and last clause he revoked all other wills by him made.

About one-half only of his real estate was specifically devised. His debts, together with the expenses of administration, amounted to about $30,000. Two of the devisees named in the sixth clause died before the testator, Catherine Elwell on the eleventh of December, 1877, and Cornelius R. Elwell in December, 1887. After the death of the said Catherine, but before the death of the said Cornelius, the testator made a codicil, dated June 2, 1887, whereby he revoked the eighth clause of his will so far as it related to the Brooklyn Children's Aid Society, but made no further disposition of the lands devised by that clause. The codicil also contained the following provisions, viz.:

"II. I hereby request my said wife to pay so long as she lives the sum of five hundred ($500) dollars annually to the 'Tree Planting and Fountain Society' of the city of Brooklyn, New York.

"III. I give and bequeath to the Long Island Historical Society my library and manuscripts.

"IV. I hereby direct that my remains be buried in the Bowne plot in the Greenwood Cemetery; that my said wife have full charge over said plot as to all matters and directions.

"V. I hereby give and bequeath to the Greenwood Cemetery the sum of two thousand ($2,000) dollars, to be retained by it in trust, to receive the income thereof and apply the same to the care and maintenance of said plot."

The library and manuscripts thus given to the Long Island Historical Society were worth about $20,000.

The will and codicil were admitted to probate in June, 1892, and again in May, 1893, and subsequently Mrs. Duryea filed a release of her dower.

Further facts appear in the opinion.

*James W. Gerard, Jr.,* and *John M. Bowers* for appellants Pierrepont H. Duryea and Harmanus B. Duryea. The devises in the sixth clause of the will to Catharine Elwell and Cornelius R. Elwell, of an undivided two-eighths interest in the premises in question lapsed by reason of their deaths before the death of the testator. (1 Jarman on Wills [5th Am. ed.], 365; *Workman* v. *Workman*, 2 Allen, 472; *Jackson* v. *Roberts*, 14 Gray, 546; 2 Jarman on Wills, 258; *Savage* v. *Burnham*, 17 N. Y. 561; *In re Wells*, 113 N. Y. 396.) Lapsed devises go to the residuary devisee. (*Cruikshank* v. *Home for the Friendless*, 113 N. Y. 337.) The tenth clause of the will is the residuary clause under which lapsed devises pass. (*In re Benson*, 96 N. Y. 510; *Patching* v. *Barnett*, 28 Wkly. Rep. 886; *Briston* v. *Masefield*, 52 L. J. Ch. 27; *Davis* v. *Bennett*, 30 Beav. 226; *Kilvington* v. *Parker*, 21 Wkly. Rep. 121; *In re Jessop*, 11 Irish Ch. 424; *U. S. T. Co.* v. *Black*, 146 N. Y. 1.) Harmanus and Pierrepont Duryea, being half-brothers of the testator, take all the lapsed devises under the tenth or residuary clause. The three King children, being children of a deceased cousin of the testator, do not take any interest under this tenth clause. (2 R. S. ch. 2, §§ 7, 8, 15; *Valentine* v. *Wetherill*, 31 Barb. 658; *De Caumont* v. *Bogert*, 36 Hun, 382; *Platt* v. *Mickle*, 137 N. Y. 106; *Bisson* v. *W. S. R. R. Co.*, 143 N. Y. 125; *Garland* v. *Beverly*, L. R. [9 Ch. Div.] 213; *Thorp* v. *Owen*, 2 S. & G. 90; *Polley* v. *Polley*, 31 Beav. 363.) As the testator became possessed of the premises in dispute by conveyance and not by descent, devise or gift from one of his ancestors, his half-brothers would inherit even if he had died intestate as to these parcels. (2 R. S. ch. 2, § 15.) The devise in the second clause of the will to the testator's wife and children, if he should leave any, is a devise to a class. (*Phelps* v. *Manier*, 15 Abb. [N. C.] 123; 1 Jarman on Wills [6th Am. ed.], 260, 262, 263.)

*Charles R. Westbrook* for John D. Elwell, appellant. The intent of testator is to be considered rather than any strict rule of construction. (*Hoppock* v. *Tucker,* 59 N. Y. 204; *Manier* v. *Phelps,* 15 Abb. [N. C.] 127; *Clark* v. *Lynch,* 46 Barb. 69; *Magaw* v. *Field,* 48 N. Y. 668; *Page* v. *Gilbert,* 32 Hun, 303; *In re Seebeck,* 63 Hun, 179; *Ferrer* v. *Pyne,* 81 N. Y. 285.)

*Edward W. Ditmars,* guardian *ad litem,* for Edith King et al., appellants. The devise in the sixth clause of the will of Samuel Bowne Duryea to Catharine Elwell and Cornelius R. Elwell of an undivided two-eighths interest in the premises of which partition is sought, lapsed by reason of their deaths before the death of the testator. (2 R. S. [5th ed.] ch. 6, tit. 1, § 47; *In re Wells,* 113 N. Y. 396.) Lapsed devises go to the residuary devisee or devisees. (*Cruikshank* v. *Home for the Friendless,* 113 N. Y. 337; 2 R. S. ch. 6, tit. 1, § 5; *Van Kleeck* v. *R. D. Church,* 6 Paige, 600.) Whilst the intention of the testator must prevail in the construction of a last will and testament, it cannot overrule the plain meaning of language. (*Van Nostrand* v. *Moore,* 52 N. Y. 18; *Wylie* v. *Lockwood,* 86 N. Y. 291.) Unless the devise by the second section or paragraph of the will be a residuary devise of the real estate, the argument of the counsel for the respondent, the widow of the testator, entirely fails. (*Van Nostrand* v. *Moore,* 52 N. Y. 12.) The provisions in favor of the widow being in lieu of dower, should she accept the same, bar her from claiming anything further, and hence she cannot claim dower in the lapsed devises. If excluded from claiming dower in the lapsed devises, she should not receive an enlarged interest by being given the fee of such lapsed devises. (*In re Benson,* 96 N. Y. 499; *In re Hodgman,* 140 N. Y. 421.) Annie Coe King, Edith King and Gertrude King are the heirs at law of the testator as to seven-eighths of the lapsed portions of the property in question, the same having come to the decedent, Samuel Bowne Duryea, one-eighth by devise under will of Samuel Bowne, the grandfather, and six-eighths

by devise under will of Gilbert W. Bowne, the uncle. (2 R. S. ch. 2, § 15; *Wheeler* v. *Clutterbuck*, 52 N. Y. 67; *Clark* v. *Lynch*, 46 Barb. 68; *Conkling* v. *Brown*, 57 Barb. 265.)

*James G. Flanders* and *Francis Lynde Stetson* for Kate Duryea, respondent. The devise in the sixth clause of the will of Samuel Bowne Duryea to Catharine Elwell and Cornelius R. Elwell of an undivided two-eighths interest in the premises in question lapsed by reason of their death prior to that of the testator. (1 Jarman on Wills [5th Am. ed.], 340; *Workman* v. *Workman*, 2 Allen, 472; *Jackson* v. *Roberts*, 14 Gray, 46; 3 Jarman on Wills, 8, § 2; *Savage* v. *Burnham*, 17 N. Y. 561; 2 Redfield on Wills, 497, 498; *In re Wells*, 113 N. Y. 396; *In re Seebeck*, 63 Hun, 179; *Delafield* v. *Shipman*, 103 N. Y. 463.) Under the statute providing that every will that shall be made by a testator, in express terms, of all his real estate or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death, a residuary devisee takes any lapsed devise. (*Youngs* v. *Youngs*, 45 N. Y. 254; *Floyd* v. *Carow*, 88 N. Y. 560; *Riker* v. *Cornwell*, 113 N. Y. 115; *Cruikshank* v. *Home for the Friendless*, 113 N. Y. 337; *In re Bonnet*, 113 N. Y. 522; *Jackson* v. *Billinger*, 18 Johns. 368; *Fox* v. *Phelps*, 17 Wend. 393; *Byrnes* v. *Baer*, 86 N. Y. 210, 216; etmore v. *Parker*, 52 N. Y. 450; *Green* v. *Dunn*, 20 Beav. 6.) Under the second clause of the will of Samuel Bowne Duryea, above quoted, the defendant Kate Duryea became and is the sole residuary devisee of said Samuel Bowne Duryea, and as such is entitled to the two-eighths of said premises in question. (*Taggart* v. *Murray*, 53 N. Y. 233; *Smith* v. *Scholtz*, 8 N. Y. 41; *Stimson* v. *Vroman*, 99 N. Y. 74; *Wright* v. *Brotherton*, 2 Rawle, 133; *In re Jodrell*, L. R. [44 Ch. Div.] 590; *Thurber* v. *Chambers*, 66 N. Y. 42; *In re Bywater*, L. R. [18 Ch. Div.] 17; *Roseboom* v. *Roseboom*, 81 N. Y. 356; Jarman on Wills [6th ed.], 436; Schouler on Wills, § 478; *Sweet* v. *Chase*, 2

N. Y. 73; *Trustees, etc.*, v. *Kellogg*, 16 N. Y. 83; *Wager* v. *Wager*, 96 N. Y. 164; *People ex rel.* v. *McClave*, 99 N. Y. 83, 89.)

VANN, J.   The plaintiff, who is one of the devisees named in the sixth clause of the will, seeks to partition the lands devised thereby, except such parts thereof as were sold by the testator in his lifetime.   Her right to partition is not disputed, and it is conceded that each of the six surviving devisees mentioned in said clause has title to an undivided eighth of the premises in question.   The contest arises over the undivided two-eighths devised to Catherine and Cornelius R. Elwell, which are claimed by various parties upon the following grounds: Mrs. Kate Duryea, the widow, claims that the gifts to those decedents lapsed because they died before the testator, and that she takes the estate represented by such devisees as residuary legatee under the second clause of the will.

The defendants Pierrepont and Harmanus Duryea claim that, as brothers of the half-blood, they are the sole heirs at law of the testator, and that, the devises having lapsed, they take as residuary devisees under the tenth clause.

The defendants King also claim under the tenth clause, but upon the ground that, as cousins of the whole blood of the mother, they are the heirs at law as to seven-eighths of the estate covered by the devise alleged to have lapsed, because that proportion of the property in question came to the testator by devise, under the wills of maternal ancestors, and that Pierrepont and Harmanus Duryea are not of the blood of those ancestors.

The defendant John D. Elwell claims that the gift in the sixth clause was to the devisees therein named as a class, and that the survivors, of whom he is one, take the whole.

It will be convenient to first consider whether the shares in question passed to the devisees of the sixth clause, as a class, with the right of survivorship, or lapsing, fell into the *residuum* and passed under one of the residuary clauses.

The answer to this question depends on the intention of the testator, which is to be learned from reading the whole will, aided, if there is any ambiguity, by a reference to such extrinsic facts as were known to the testator when he executed it. The mode of the gift is to " my aunt," giving her full name, and to " my cousins," giving the full name of each, and adding " each to take an equal share therein."

Thus, we have a devise to eight persons, each designated by name, with nothing on the face of the will to indicate that they compose a class, or even that they are members of the same family, although it appears from evidence outside of the will that they constituted the Elwell family, consisting of a mother and her seven children. The words " aunt" and " cousins," as thus used, may properly be regarded as merely descriptive of the persons named for the purpose of identification, and not as indicating a class. There is no reference in any other portion of the will, either to the devisees of the sixth clause or to the estate devised therein. There is no double description, both by individual names and as a class, nor a gift to a body of persons, uncertain in number, collectively described. The devise was to eight persons *nominatim*, in equal shares, with no words necessarily pointing to a class. There is nothing in the rest of the will that bears upon the intention of the testator as to the point under consideration, aside from the residuary clauses which prevent partial intestacy, except that it appears when he wished to give to a class, as he did in the second clause, or to provide against a lapse, as he did in the seventh clause, he made his meaning clear beyond a doubt by the use of express terms. The designation of the devisees by giving the full name of each constituted them *personæ designatæ* as those words are known in the law. There was no perfect devise except to the devisees by name. Omitting the names, the gift would fail for uncertainty, as the testator had more than one aunt and more than seven cousins. " In a gift to a class you look to the description and inquire what individuals answer to it, and those who do answer to it are the legatees described."

(13 Am. & Eng. Ency. of Law, 61.) While the mere fact that part of the persons composing a class are named is not controlling, when all are named, each by his or her name in full, and an equal share is given to each, the presumption is that they are to take in their individual and not in their collective capacity, although this may be rebutted by other parts of the will showing a different intention, which, as we have seen, does not appear in the will in question. (3 Jarman on Wills, 8; Woerner's Am. Law of Adm. § 434.) As was said by Judge Comstock in *Savage* v. *Burnham* (17 N. Y. 561, 575): " When a will directs an aggregate fund to be divided amongst individuals by name, share and share alike, the rule seems to be well settled that the interests of those dying before the testator are deemed to have lapsed." The courts invariably attach great importance to the designation of the devisees severally by name, and to a provision that they shall share the gift in fixed and definite proportions. To quote Judge Comstock again: " When an equality or inequality of shares is prescribed in express words, the language was always held to create " the relation of tenants in common. (*Downing* v. *Marshall*, 23 N. Y. 366, 373.) When it so happens that the devise is to a class, as such, without naming the individuals or providing that each shall take a definite share, as was the case in *Magaw* v. *Field* (48 N. Y. 668), where the gift was " to the children of Van Brund Magaw," it is held a gift to a class, and that only the survivors take. Necessarily, where the devisees are described as a class only, their names not being mentioned, and there is nothing to indicate a gift to individuals, the gift is to a class as such, and not to particular persons who may compose a class. If they did not take as a class, they could not take at all. In *Hoppock* v. *Tucker* (59 N. Y. 202) the devise was to three persons by name, and as " the children of my deceased daughter Ann Maria." The court, through Chief Judge Church, said: " It must be conceded that the clause, as it is written, with its double description, free from the influence or control of other portions of the will, would, according to the adjudicated cases, be construed as a

personal legacy to each child. (*Ashling* v. *Knowles*, 3 Drewry, 593; *Viner* v. *Francis*, 2 Cox Eq. 190; *Denn* v. *Gaskin*, Cowp. 657; *Bain* v. *Lescher*, 11 Sim. 397.) The law infers this intent from the specification of names, and regards the descriptive portion of the clause as intended for identification." The court concluded, however, wholly from other and quite significant language used in a different part of the will then under consideration that the devisees took as a class, the intention of the testator to that effect plainly appearing. In *Matter of Wells* (113 N. Y. 396) the devise was of " one-eighth part to each of five persons named and one-eighth part to the children of three other persons " \* \* \* " 'to have and to hold the same to them, their heirs and assigns forever.' " Four of the devisees having died before the testator, it was held that the devise to them lapsed. In *Matter of Kimberly* (150 N. Y. 90), where the gift was "unto my three sisters, Mary, Annie and Louisa," the court held that it was not to them as joint tenants, nor as a class, but as tenants in common, and, as one of the three died before the testator, that her devise lapsed, although the result was partial intestacy. The court based its conclusion upon the ground that the number of the donees was certain, and the share each was to receive was also certain and in no way dependent for its amount upon the number who might survive.

We find no precedent of this court authorizing the conclusion that the devisees of the sixth clause took as a class. We think that by naming the devisees and giving an equal share to each, without the use of any word applying strictly to a class, or anything requiring a class to satisfy the scheme of the will, the testator intended to make the beneficiaries of that clause tenants in common, and that they should take distributively and not collectively. The lapsed devises went into the residue, as the common-law rule to the contrary has been done away with by statute, and there is no longer any difference as to the operation of a residuary clause between lapsed devises and lapsed legacies. (*Cruikshank* v. *Home for the Friendless*, 113 N. Y. 337, 353; 2 R. S. 57, § 5.)

The discussion is now narrowed to the residuary devisees, but it is not easy to determine under what residuary clause the lapsed devises passed. It is clear that the testator did not intend to die intestate as to any portion of his property, either real or personal, for there are three residuary clauses in his will. The first is unimportant, as it relates to personal property only, except as it shows unusual care to provide against every possible contingency that the uncertainty of life might bring and to protect his estate from partial intestacy, no matter what might happen. Having his wife first in mind, he gave all his personal estate to her, if she should survive him; but if he proved the survivor, or if they both died on the same day or by reason of the same casualty, he gave it to his next of kin.

The second and third residuary clauses, relating exclusively to real estate, appear in the second and tenth paragraphs of the will. By the former, which may be termed the special residuary clause, he continued to favor his wife, for he gave her all his real estate, not otherwise given, unless he should leave descendants, and in that event he gave all to her and to them. He did not, however, by this clause, which disposed of more property than any other paragraph in his will, provide against contingencies involving partial intestacy with the same care that he showed in disposing of his personal property, for he failed to direct where the *residuum* of his real estate should go in case he survived his wife and died without descendants. There was another contingency left unprovided for, and that was the possibility that his wife might not accept the provisions of his will in lieu of dower, as he had previously required. As his property consisted mainly of real estate, this was of much importance and was not likely to be overlooked in a will drawn with the care and foresight of the one under consideration. By the tenth clause, however, which is a general residuary clause relating to real property, he provided against both of these contingencies and thereby shut out the last possibility of partial intestacy. He evidently regarded it as a safety clause and adopted it to provide against

remote contingencies.   That he did not expect any *residuum* for this paragraph to act upon, is indicated by his expression, " if any there prove to be," referring to real estate.   The gift " to those who may be my heirs at law at the time of my decease," indicates that he thought he was dealing with possibilities rather than probabilities, and thus supports the theory of a safety clause.   Apparently he did not expect that anything would pass by the tenth clause, but inserted it from abundant caution in order to provide for an improbable contingency.   The codicil throws little light on the question before us.   Although it was executed after the death of at least one of his devisees, and it revoked the contingent devise of a large amount of real estate in the eighth clause, still he did not direct to whom the gifts thus affected should go, except as he had already directed in the residuary clauses of his will.   The fact that he made no further disposition of the subject-matter, simply shows that he was satisfied with the way it would go under the general provisions of his will. As the codicil gave to strangers about one-fourth of the personal property bequeathed by the will to his wife, it is reasonable to believe that he intended to make it up to her by allowing her to take the addition to the real estate not specifically disposed of   Provisions for the benefit of a wife should be construed liberally in her favor.   It is clear that he did not intend by the tenth clause to revoke the prior devise to his wife, as that would be hostile to his general purpose, and would render the provisions for her of less value than her rights under the statute. (*Stimson* v. *Vroman*, 99 N. Y. 74, 80 ; *Thurber* v. *Chambers*, 66 N. Y. 42, 48.)   This could be done " only by express words or by clear and undoubted implication." (*Freeman* v. *Coit*, 96 N. Y. 63, 68 ; *Roseboom* v. *Roseboom*, 81 N. Y. 356 ; *Bristow* v. *Masefield*, 52 L. J. R., Ch. Div. 27.)   If the lapsed devises had been expressly revoked, it would hardly be contended that they fell into the tenth clause.   Why should it be so held under the facts as they exist, since the dominant purpose of the testator was to take care of his wife ?   His first thought was of her and his

intention to take from her and give to remote relatives, whom
he could not mention by name, should plainly appear, or the
theory rejected as untenable. It is not enough to simply
raise doubts by considering detached parts of the will by
themselves, provided the general purpose of the instrument,
as a whole, points in the opposite direction. Special reliance
is made by those appellants whose claims are now under con-
sideration, upon the gift by the second clause of all his real
estate, "except the portions thereof hereinafter otherwise
given or disposed of  *  *  *  in like manner to my said
wife." It is insisted that he thus imported into the second
clause and applied to the real estate the contingencies applied
in the first clause to personal property. It is improbable,
however, that in a will so carefully drawn, such a loose and
ambiguous method would have been adopted simply to avoid
repeating a few words, and manifestly the gift in the second
clause was not made "in like manner" to that in the first, for the
conditions and terms of the gift are utterly different, even if
the imported words are inserted. The devise "in like man-
ner" refers to the gift to the wife and may have been used in
the sense of "also," to indicate a gift to her in addition to that
made by the preceding clause; or, it may have been used to
refer to the basis of the gift, in that it was to be accepted in
lieu of dower, the same as the bequest of the personal prop-
erty. So the gift of all but certain excepted portions "other-
wise given or disposed of" may refer to gifts effectually made,
as distinguished from those which might lapse. By general
rule, the will speaks from the death of the testator, and as to
the second and tenth clauses, this is necessarily the result, at
least in part, independent of the rule, for until that time it
could not be known whether he would leave any children or
not, or who would be his "heirs at law." Speaking as of that
date, lapsed legacies would be ignored the same as if they had
not been made. Moreover, a gift of "all other land," or of
"all land not hereinbefore devised," is regarded as a devise of
the residue, and not as indicating an intention "to exclude
lapsed specific gifts." (*Cogswell* v. *Armstrong*, 2 K. & J.

227; *Green* v. *Dunn*, 20 Beav. 6; *Culsha* v. *Cheese*, 7 Hare, 236; *Carter* v. *Haswell*, 26 L. J. Ch. 576; *Burton* v. *Newbery*, L. R. [1 Ch. Div.] 241; *Roberts* v. *Cooke*, 16 Vesey, 451.) While the arguments of the learned counsel for the appellants founded on the tenth clause and parts of the second, have caused us to hesitate before pronouncing judgment, we think that the general purpose of the will as indicated by the analysis already made should control. The second and tenth clauses are not necessarily inconsistent, for if the former is construed as a special residuary clause, to be operative unless the widow should die first, or should refuse to accept the provisions of the will in lieu of dower, and the latter as a general residuary clause, to be operative in case either of said contingencies should happen, there is no inconsistency, and every part of the will speaks and is given its apparent function. This impresses us as more reasonable and probable, in view of all the facts, than to suppose that the testator was trying to provide for lapsed legacies which would render the said clauses inconsistent. Seeking to gather the intention of the testator from the entire will, as republished in the codicil, and carefully studying his main design, based on the natural import of the words used by him, we think that the nearest approach to his actual purpose that can be made is to adjudge that he intended his "beloved wife Kate Duryea" should be his sole residuary devisee, unless he should survive her, or she should insist upon her statutory rights.

The judgment should, therefore, be affirmed, with costs.

All concur.

Judgment affirmed.