Matter of the Estate of MARGARET BARRETT, Deceased.

(Surrogate's Court, Dutchess County, May, 1909.)

Wills — Interpretation — Disposal of the entire estate: Effect of death, uncertainty or invalidity or incapacity of legatees or devisees — Effect of death of beneficiary in life of testator — Of legatee of share in residue: Disposal of lapsed or void devises or bequests, or of otherwise undisposed property — Lapsed, void or ineffectual gifts.

A legacy, which lapses by reason of the death of the legatee before the testatrix, goes into the residuum of the estate and inures to the benefit of each of the residuary legatees capable of taking at the death of the testatrix, share and share alike, and one of her next of kin, as such, has no interest in the lapsed legacy.

Where testatrix gave all the rest and residue of her estate, except a small amount otherwise specifically bequeathed, to the four brothers of her deceased husband, by name, share and share alike, the share of her estate which would have gone to one of said brothers had he survived the testatrix did not pass to the surviving residuary legatees under the will but must be distributed among the next of kin of the testatrix as property undisposed of under her will.

APPLICATION for a compulsory accounting.

Walter Farrington, petitioner, in person.

Palmer & Fagan, for executor.

HOPKINS, S. Margaret Barrett, late of East Fishkill, died May 30, 1907, leaving a will which was duly admitted to probate by the surrogate of this county September 23, 1907; and on that day letters testamentary were issued to John J. C. Barrett, the executor named therein.

Walter Farrington, who is conceded to be one of the next of kin of the deceased, presents a petition to this court, asking for a compulsory accounting of the executor, and for a distribution of the estate to the legatees named in the will;

and for a decree directing the distribution of a general legacy which had lapsed by reason of the death of the legatee during the lifetime of the testatrix, and a residuary legacy which had lapsed by reason of the death of the residuary legatee during said time, amongst the next of kin of said deceased. Twelve months having elapsed since letters testamentary were issued to the executor, the petitioner is entitled to an accounting, provided he is in any way interested in the funds of the estate. His interest, therefore, depends upon a construction of two clauses of the will of said deceased, which will be taken up separately.

Under the second clause of said will, the testatrix made the following bequest: " *Second.* I give and bequeath to my brother, Peter F. Mead, the sum of one thousand dollars." Said Peter F. Mead having died during the lifetime of said testatrix, the question arises as to what becomes of this legacy.

In consequence of the death of Peter F. Mead during the lifetime of the testatrix, the legacy lapses; and, under the general rule of law applicable to general legacies which may lapse or may be invalid for any reason, such a lapsed legacy becomes a part of the residuary estate, in all cases where the testator has made such provision.

It appears that said testatrix created a general residuary clause in her will giving to persons therein named all the rest and residue of her property after the payment of the general legacies to certain legatees named therein.

The general proposition of law is that a general residuary bequest of personal property carries to the residuary legatee, not only such estate and such interest therein as the testator did not attempt to dispose of by other provisions of his will, but every part of his property which lapses or otherwise is not effectually bequeathed and disposed of to others. Matter of Benson, 96 N. Y. 499; Moffett v. Elmendorf, 152 id. 475; Langley v. Westchester Trust Co., 180 id. 326; Leggett v. Stevens, 185 id. 79.

Therefore, it is my conclusion that the legacy to Peter F. Mead, which lapsed by reason of his death before the testatrix, goes into the residuum of the estate and inures to the

Surrogate's Court, Dutchess County, May, 1909.        [Vol. 63.

benefit of each of the residuary legatees capable of taking at the death of the testatrix, share and share alike, and that the petitioner herein, said Walter Farrington, has no interest whatever in such legacy.

The second question involved in this matter arises from the fact that Isaac D. Barrett, one of the residuary legatees, died in the lifetime of the testatrix, and a construction of the residuary clause of said will is necessary to ascertain what becomes of his share, and whether his share passes to the surviving residuary legatees or passes to the next of kin as property undisposed of by the will. The residuary clause in said will reads as follows: "*Eighth.* I give and bequeath unto Simeon Barrett, Moseman Barrett, Isaac D. Barrett, Wright Barrett, all brothers of my deceased husband, John Barrett, all the rest and residue of my property to share and share alike, except the sum of three hundred dollars, which I give and bequeath unto Louisa Ostrom, wife of Richard Ostrom, Sarah Miles, Harriet Miles, the said sum of three hundred dollars to share and share alike."

The petitioner contends that the legacies were intended to go to those four persons in equal shares as tenants in common, and that, Isaac D. Barrett having died during the lifetime of said testatrix, his one-fourth share passes to the next of kin of said deceased, and not under the will; but the contention made by the executor is, that, under the language of the residuary clause, it was the intent of the said testatrix to have the four people named in said clause take the residuary as joint tenants; and, in such case, the three surviving residuary legatees would take the share of the one who died; in other words, the executor contends that the gift under the residuary clause was to a class and not to the individuals.

Whether a devise or bequest in a will is to a class or to individuals as tenants in common must depend upon the language employed by the testatrix in making the gift. All the provisions of the will may be consulted, and sometimes aid may be sought from the situation and relation of the parties. In this case, there is nothing in the will outside of the residuary clause itself that throws any light on this

question; and I have not been able to find in any of the cases cited any attempt to define or formulate with much accuracy the language or circumstances necessary to constitute a gift to a class. Perhaps, from the nature of the question, it is impossible to lay down any general rule or to do more than to determine every case upon its own facts and to construe every will with reference to the language employed by the testatrix, and the surrounding circumstances. The language and the circumstances are so seldom identical that it is not often that one case can be determined upon the authority of some other case or class of cases. But there are some principles and canons of construction recognized by all authorities which, when applied to the particular case, will ordinarily enable the courts to arrive at a reasonable and just conclusion.

When stated and applied to this case, it will be seen that there will be little difficulty in determining the nature and character of the gift to Simeon Barrett, Moseman Barrett, Isaac D. Barrett and Wright Barrett, whether collectively as a class, or distributively as tenants in common.

In legal contemplation a gift to a class is a gift of an aggregate sum to a body of persons, uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or some other definite proportion, the share of each being dependent for its amount upon the ultimate number. Matter of Kimberly, 150 N. Y. 90–93; Matter of Russell, 168 id. 196; Langley v. Westchester Trust Co., 180 id. 326.

Here, in this case, the number of persons was certain at the time of the gift, the share each was to receive was also certain, being one-quarter of the residuary estate, and was in no way dependent for its amount upon the number who should survive; and, therefore, this case is not within the principle invoked by the executor and to which he applies the decision in Hoppock v. Tucker, 59 N. Y. 202, and in which case the court says that their conclusion is arrived at with some hesitation.

The executor also contends that it was the intention of the testatrix, by the language employed in the residuary clause,

to give the residue of her property to the four people named therein as a class, and not as individuals, because, after naming them, she added the words, "all brothers of my deceased husband, John Barrett," and that thereby she intended to designate them by such reference to be a class, and to take the residuary property as if their names had not been mentioned in such will, but the clause had read "I give and bequeath unto all brothers of my deceased husband, John Barrett, all the rest and residue of my property share and share alike."

I cannot agree with this contention, as it seems to me that the words, "all brothers of my deceased husband, John Barrett," following the names of the individuals in the residuary clause, were merely descriptive and inserted therein for the purpose of identifying each particular Barrett, in order, perhaps, to distinguish them from other Barretts of the same name, or in the same locality.

If the testatrix had intended to make her gift to these four people as a class, it would have been a very simple and easy matter to have inserted in her will a reference, that all the residuary legatees were "all the brothers of her deceased husband;" and such language might have then been construed as intending a class including all the brothers of her said husband without naming them; and I conclude that, from the language employed in the residuary clause in this will, she intended these four people to take as individuals and as tenants in common, and not as joint tenants.

The legatee died in the lifetime of the testatrix and was related to her deceased husband, and she must be presumed to have known of his death. The will spoke at her death and then first took effect. It must be treated as though the testatrix had made no disposal of the portion bequeathed to the residuary legatee Isaac D. Barrett, and that she had intentionally died intestate as to such portion. I, therefore, conclude that the portion or share of the estate which would have gone to Isaac D. Barrett, had he survived the testatrix, does not pass to the surviving residuary legatees under the will, but must be distributed among the next of kin of the deceased as property undisposed of under the will; and,

therefore, that the petitioner is entitled to a share in said portion and to an accounting by the executor.

Let an order be entered directing the executor to account, the time and manner to be fixed by consent or upon three days' notice by either party.

Decreed accordingly.

Matter of the Judicial Accounting of Henry T. Carey, Frederick Gore King and John C. O'Conor, as Trustees Under the Last Will and Testament of George Winthrop Thorne, Deceased.

(Surrogate's Court, Suffolk County, May, 1909.)

Executors and administrators — Distribution and disposal of personal estate — Computation and adjustment of interests and discharge thereof: Computation and apportionment of income: Funds, assets and securities for distribution and to pay legacies — What is income.

Trusts — The beneficiary, his estate, rights and interest — Rights of beneficiary of income — What is income.

Where by the will of a testator, who at the time of his decease was the owner of one hundred shares of the common stock of a corporation, his testamentary trustees were directed to pay to a certain person an annuity from the income of his estate and make immediate payment of the entire surplus of the income to another person, and several years after the death of the testator, under a plan to increase the capital stock of the corporation, the holders of the outstanding common stock had the right to subscribe at par, for cash, an amount of the new increased common stock equal to forty per cent. of the outstanding stock held by them, respectively; and, under an agreement by which every stockholder signing the same covenanted and agreed, but only on payment of the extra cash dividend, to so subscribe and pay for the new stock, the cash dividend so paid to be applied in payment of such subscription; and where the testamentary trustee received, under such agreement, a certificate for forty shares of the new common stock, said shares are no part of the capital of the trust fund but profits in excess of the annuity and belong to the legatee of the balance of the income, as, no matter how said stock was designated on the books of the corporation, it represented actual profits and income from its business and it was from such fund that said divi-