[L. A. No. 6085.   Department Two.—February 17, 1920.]

In the Matter of the Estate of MARIE ANTOINETTE FISK, Deceased.

[1] ESTATES OF DECEASED PERSONS—WILL—UNCERTAINTY OF BEQUEST —LAW OF SUCCESSION—WHEN INAPPLICABLE.—The rule that where property is bequeathed and the will is uncertain, the court, in ascertaining the purpose of the testatrix, will assume the intent to be to distribute the property in accordance with the law of succession, has no application to a residuary clause under which none of the legatees would take in the absence of a will, although one of them, a daughter-in-law, was regarded by the testatrix as her daughter.

[2] Id.—Residuary Clause — Division of Bequest—Interpretation of Word "Between."—A clause in a will providing that the residue of the estate shall be divided equally "between" the daughter-in-law of the testatrix, and the four children of the sister-in-law of the testatrix, naming them, is to be interpreted as calling for an equal division of such residue among the five legatees, and not one-half to the daughter-in-law and the other one-half to the four children.

APPEAL from a decree of partial distribution of the Superior Court of Los Angeles County. James C. Rives, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. G. Allen for Appellant.

O'Melveny, Millikin & Tuller and Joseph C. Finch for Respondent.

WILBUR, J.—Maude Bryant Fisk appeals from a decree of partial distribution, claiming that the interpretation placed upon the residuary clause in the will of the testatrix was erroneous, for the reason that the decree provided for an equal division of the property among five persons named in the residuary clause, whereas it should have given one-half thereof to appellant, and distributed the other half to William Dunn, Aida Furst, Charles Dunn, and Clarence Dunn. In other words, that appellant should have received thirty thousand dollars instead of twelve thousand dollars of the sixty thousand dollars distributed. The residuary clause in the will reads as follows: "All the rest and residue of my estate both real and personal shall be divided equally between my daughter-in-law Maude Bryant Fisk, and the four children of my late husband's sister, Mrs. W. Dunn, viz., William Dunn, Aida Furst, Charles Dunn, and Clarence Dunn, except the memorandum of the following articles to be distributed by my son's widow, Maude Fisk. . . . " Appellant's contention is largely based upon the use of the word "between" and the phrase "children of my late husband's sister, Mrs. W. Dunn." The argument advanced is that the word "between," when used with strict grammatical accuracy, applies only with reference to two things (Funk & Wagnall's New Standard Dictionary; Webster's New In-

ternational Dictionary; Century Dictionary & Encyclopedia; Skeat's Etymological Dictionary of the English Language; *Ghriskey's Estate,* 248 Pa. 90, [93 Atl. 824]), and that, therefore, we must search the will to discover these two things and, doing so, find therein the daughter-in-law on the one hand and the children of Mrs. W. Dunn, deceased, on the other, and that, therefore, when the will provides that the residuum be divided "equally between" the daughter-in-law and the "children of my late husband's sister Mrs. W. Dunn," it means that the daughter-in-law takes one-half and the children one-half. The respondent concedes that when the word "between" is used in strict grammatical sense it applies to two things, but calls attention to the fact that it is frequently used in the sense of "among" and has been so interpreted in the construction of wills by many courts, including our own. (*Senger* v. *Senger,* 81 Va. 687, 697, 698; *Kling* v. *Schnellbecker,* 107 Iowa, 636, [78 N. W. 673]; *Graves* v. *Graves,* 55 Hun, 58, [8 N. Y. Supp. 284]; *Ward* v. *Tomkins,* 30 N. J. Eq. 3; *Lord* v. *Moore,* 20 Conn. 122, 126; *Myres* v. *Myres* (N. Y.), 23 How. Pr. 410, 415; *Estate of Morrison,* 138 Cal. 401, 404, [71 Pac. 453].) Giving to the word "between" all the etymological significance to which it is justly entitled, that word alone is hardly sufficient to determine the question involved in the case. We turn, therefore, to a more complete analysis of the clause, the interpretation of which is here involved. If we take the clause down to and including the words "Mrs. Dunn" and omit the word "four," no doubt would be entertained, and we understand that the respondent concedes that the clause would require a division into two parts as contended for by the appellant. But the injection of the word "four" into this clause at once suggests a doubt as to the intention of the testatrix with reference to the method of division. This doubt is accentuated by the fact that following the name of the mother, Mrs. Dunn, are the names of the four children, showing that at the time the will was drawn the testatrix had in mind five individuals who were to be benefited by the residuary clause. The respondent contends that the rule is universal, that where the description of a clause such as "children of my late husband's sister, Mrs. W. Dunn" is followed by the names of the individual beneficiaries, that they take as individuals—per capita and not *per stirpes,* citing *Estate of Murphy,* 157 Cal. 63, [137 Am. St. Rep.

110, 106 Pac. 230]; *In re Barrett's Estate,* 132 App. Div. 134, [116 N. Y. Supp. 756]; 63 Misc. Rep. 484, [116 N. Y. Supp. 756]; *In re Kimberly's Estate,* 150 N. Y. 90, [44 N. E. 945]; *Moffett* v. *Elmendorf,* 152 N./Y. 475, [57 Am. St. Rep. 529, 46 N. E. 845]; *White* v. *White's Guardian,* 168 Ky. 752, [182 S. W. 942]; *Provenchere's Appeal,* 67 Pa. St. 464, 465; *Todd* v. *Trott,* 64 N. C. 281; *Williams* v. *Neff,* 52 Pa. 326; *Almand* v. *Whitaker,* 113 Ga. 889, [39 S. E. 395]; *Malone* v. *Majors,* 27 Tenn. (8 Humph.) 576; *Wells* v. *Newton,* 67 Ky. (4 Bush) 158. The character of reasoning by which this conclusion is arrived at is indicated by some of the quotations from the opinions thus called to our attention. In *Estate of Murphy, supra,* it is said: "If words, which, standing alone, would be effectual to create a class, are followed by equally operative words of devise to devisees by name and in definite proportions, the law infers from the designation by name and mention of the share each is to take, that the devisees are to take individually and as tenants in common and that the descriptive portion of the clause [children of a deceased sister] is intended merely as matter of identification." Later, in the same case, it is said of the general rule: "When in a devise a class and individuals are both mentioned and nothing appears from other clauses of the will or extraneous evidence requiring a different construction, the devise will be construed as one to devisees individually and not to them collectively—to them as tenants in common and not to them as survivors of a class." It should be noted, however, that the devise involved in that will was very different from that involved here. There were, in that case, practically two separate and distinct devises, one interpretative of the other. After the first provision that the residue shall "be equally divided among the four children of my late sister Catherine F. Flynn" occurs the following: "that is to say: I give, devise and bequeath all the rest of my personal property and all my real estate of whatsoever kind and wheresoever situate, share and share alike, to Timothy J. Flynn, William D. Flynn, Mary Jane Logan and Kate I. Prendergast."

In *Barrett's Estate, supra,* the following statement of the surrogate is approved: "In legal contemplation, a gift to a class is a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are all to take in equal or

some other definite proportion; the share of each being dependent for its amount upon the ultimate.number.''

*In re Kimberly's Estate, supra,* the gift being ''unto my three sisters, Mary, Annie and Louisa,'' it was held not to be a gift to a class, the court saying: ''Here the number of persons was certain át the time of the gift; the share each was to receive was also certain, was in no way dependent for its amount upon the number who should survive; and hence this case is not within the principle invoked.''

In *Moffett* v. *Elmendorf, supra,* it was said: ''The courts invariably attach great importance to the designation of the devisees severally by name, and to a provision that they shall share the gift in fixed and definite proportions. . . . Necessarily, where the devisees are described as a class only, their names not being mentioned, and, there is nothing to indicate a gift to individuals, the gift is to a class, as such, and not to particular persons who may compose a class.''

The court, in its findings, set out practically all the evidence with reference to the relationship of the parties bearing upon the correct interpretation of the will. This was evidently done in order that we might be in as favorable a position to determine the difficult question involved as was the trial court, so far as that interpretation depends upon extraneous evidence. The most significant of this is a letter referred to in the will with reference to a legacy of fifteen thousand dollars to the appellant, who was the widow of the only son of the testatrix. From the time of her marriage in 1900 she and her husband lived with the testatrix until the husband's death in 1902, after which appellant lived with the testatrix about one-half of the time, and was there treated as a daughter until the death of testatrix. Evidently the testatrix regarded the appellant with maternal affection. If, in ascertaining the meaning of the will, it is proper to measure the feelings of the testatrix by the nature of the disposition of her property, we find abundant evidence of the affection she had for her daughter-in-law. Testatrix's home, valued at ten thousand dollars, with its contents, except in certain particulars mentioned, was left to the appellant. The testatrix also bequeathed appellant her sealskin sack, souvenir spoons collected by appellant's deceased husband, diamond ring, gold thimble, and other personal effects which were to be distributed by appellant as her

judgment dictated.   Appellant was made an executrix of the will.   She was also made a special bequest of fifteen thousand dollars with a letter of advice of how "I wish her to use the whole or a part of the fund." This letter, thus referred to in the will, is to the effect that the appellant was to use the whole or such part thereof as might be necessary in order to make the bequest to Princeton University equal to at least fifty thousand dollars.   It is argued from these considerations that the affectionate relationship between the testatrix and the appellant was such that it was her intention to give a larger proportion of the residuum of her estate to appellant than a one-fifth thereof, and in this connection it is disclosed that while the relationship between the testatrix and the other persons mentioned in the residuary clause was friendly and to an extent affectionate, it did not partake of the same intimacy existing between appellant and the testatrix.   The argument in this behalf is a most persuasive one.   But if we turn to the provisions of the will we find that Aida Furst, one of the four persons named in the residuary clause, was given a bequest of ten thousand dollars, diamond ear-rings, mahogany sofa, and testatrix's watch, and that her son, Sidney Dale Furst, was given two thousand five hundred dollars, and that by the codicil five thousand dollars was left for the education of her son Wolcott.   If we take the amount of the legacy as the measure of affection, there is no great disproportion between the recognition of the respondent Mrs. Aida Furst and the appellant, and if these two names only were involved in the residuary disposition there is no such disparity in the provisions made for them in the balance of the will as would justify the conclusion from that fact alone that the testatrix intended, in the residuary clause, to give to one more than to the other.   It should be observed also, with reference to the other persons mentioned in the residuary clause, that while they were not given other bequests, the son of Charles Dunn was given two thousand five hundred dollars, and the daughter of William Dunn was given two thousand five hundred dollars and some small tokens.   Thus the three residuary legatees, Mrs. Aida Furst, Charles Dunn, and William Dunn, were recognized by gifts to their children, amounting in each case to two thousand five hundred dollars.   So that, aside from the special bequests to Mrs. Aida Furst, we

find these three persons mentioned in the residuary clause treated alike, and that Clarence Dunn could not be similarly recognized because he had no children.

Upon the question of the amount left to these various residuary legatees, the bequest of fifteen thousand dollars to the appellant has much significance, and in order to appreciate that significance it will be necessary to state further facts bearing upon the purpose of the testatrix. The letter of advice with reference thereto reads as follows:

"My dear Maude:

"When you read this I shall be beyond the worry and strife of this world. You know well my great anxiety about the memorial in Princeton University for the dear one you and I both loved so well. I, in going to be where he is, leave you to carry out my intentions with full confidence in your integrity to carry out my wishes. It is my desire that Princeton University have $50,000 to invest as I have stated in my will. Fearing that I might, according to the laws of California so distribute my estate as to frustrate my intentions for the bequest, I leave you fifteen thousand dollars, a part or all of which I expect and direct that you give to Princeton to make up the deficit which may be the result of my devising to Princeton only one-third of my estate minus the other bequests which are not to individuals, and in this manner Princeton will receive the fifty thousand dollars which I desire to leave to it. Now, my dear, I hope you will have many happy days in the home on California St. and have health to enjoy the means you will have. Do not remember my faults so well as the loving interest I have always felt in you as all there was left to me of the dear son who was my idol even with all my failings.

"June 15, 1907.

                    "Lovingly,
                        "Mother,
                            "Marie A. Fisk."

It will be observed from this letter that the cardinal purpose of the testatrix was to create a fund of at least fifty thousand dollars for the memorial at Princeton University. In giving fifteen thousand dollars by this special legacy to the appellant she was willing that the amount received by the appellant should be reduced by such an amount as might be needed to increase the gift to the university to fifty thou-

sand dollars. The testatrix was fully advised as to the restriction contained in the law of California limiting charitable bequests to one-third of the estate. (Civ. Code, sec. 1313.) Having given charitable bequests other than that to the university, amounting to twelve thousand dollars, she evidently felt that the share which the university would receive under the will might not exceed thirty-five thousand dollars (as thus only fifteen thousand dollars would be required to make up the fifty thousand dollars). That is to say, she recognized that one-third of the estate might not exceed forty-seven thousand dollars, and that the estate in that event would be one hundred and forty-one thousand dollars. If the estate had not exceeded this amount and the residuary clause had been divided in five portions, appellant would have received under the will in all nearly twice as much as Charles, William, and Clarence Dunn, and an amount about equal to Mrs. Aida Furst. But this evidently was the lowest point to which, in the mind of the testatrix, the gift to her daughter-in-law could be reduced. If, however, we assume that the interest which the university would take under the will, exclusive of the fifteen thousand dollars, was fifty thousand dollars, the entire estate would amount to one hundred and eighty-six thousand dollars, the residuum would be one hundred thousand dollars, and the appellant would receive forty-five thousand dollars, Mrs. Aida Furst would receive thirty thousand dollars, and Charles, William, and Clarence Dunn each twenty thousand dollars. By reason of the fact that the appellant was given a special legacy of fifteen thousand dollars, to be used as indicated, it followed that for every fifteen dollars added to the estate between one hundred and forty-seven thousand dollars and one hundred and eighty-six thousand dollars, she took seven as against two to each of the other residuary legatees; that is to say, she took one-third of the increase of the estate which would otherwise be required from the fifteen thousand dollars for the university, and she took as a part of the residuary legacy one-fifth of the other two-thirds, making a total of seven-fifteenths as against two-fifteenths to each of the other residuary legatees. It appears from the decree of distribution that the value of the estate is such that appellant will receive the entire fifteen thousand dollars, as was, no doubt, intended by the testatrix. Indeed, as the will speaks

from the date of the death, it must be applied to the situation at that time, and we must assume that the testatrix intended the appellant to have the entire fifteen thousand dollars. This discussion brings us to the conclusion that, notwithstanding the evident affection of the testatrix for the appellant, there is no clear indication in the will that an equal division of the residuum would do violence to the evident purpose of the testatrix. While great emphasis is placed by the appellant upon the apparent intention of the testatrix that the daughter-in-law should remain in the home and maintain it as such, and the fact that outside of the moneys coming to her from this estate she had an income of about one thousand dollars per annum, we cannot see that here is any clear light which will show the intention of the testatrix. She may well have felt that it would be better for her daughter-in-law to make some effort in her own behalf than to remain alone in a home and be waited upon by servants. In any event, after canvassing the various contentions of the parties, we must return to a consideration of the language used by the testatrix and find herein, if possible, the key to her intentions. [1] In this connection appellant invokes a rule of construction which, we think, has no application to the will in question, namely, the rule that where property is bequeathed and the will is uncertain, the court, in ascertaining the purpose of the testatrix, will assume the intent to be to distribute the property in accordance with the law of succession, and, in the absence of a clear intent to make other disposition, interpret the will accordingly. This rule is invoked upon the theory that inasmuch as appellant was regarded by the testatrix as her daughter and the other residuary legatees as more distant relatives connected only by marriage, we should apply this rule of construction. The insurmountable difficulty in that course lies in the fact that none of the residuary legatees would take in the absence of a will. For that reason there is no room for the operation of the rule, however just such an application might otherwise seem to be.

[2] After canvassing the whole matter and all the arguments, so diligently and effectively presented by counsel, we are inclined to think that the strong inference to be derived from the use of the word ''between'' by the testatrix, who was a cultured woman and well acquainted with the use of

language, is overcome by the use of the names of the residuary legatees, and that a consideration of the entire residuary clause shows that she had in mind five individuals to whom the residuary legacies were to go, and that in providing for distribution these individuals thus named were to share alike.    In arriving at this conclusion we are mindful of the fact that a contrary one might well be reached and that no human tribunal will ever be able to ascertain exactly what the testatrix meant.    But courts are charged with the duty of distributing the property left by the testatrix, and, for that purpose, of ascertaining the meaning of her will by the application of such rules of interpretation and evidence as bear thereon.    So construed we hold that the decree of the trial court was correct.

The decree of partial distribution is affirmed.

Lennon, J., and Kerrigan, J., *pro tem.*, concurred.