[Civ. No. 2908. Fourth Appellate District.—January 13, 1941.]

In the Matter of the Estate of W. I. BURNETT, Deceased. LUCENA BURNETT et al., Appellants, v. G. C. BURNETT, as Executor, etc., et al., Respondents.

Robert B. Gaylord, Gaylord & Gaylord and W. R. Bailey for Appellants.

Russell & Heid for Respondents.

KLETTE, J., *pro tem.*—This is an appeal taken by Lucena Burnett, widow of deceased, and by Robert B. Gaylord and Robert B. Gaylord, Jr., her assignees, from an order settling final account and directing distribution of the above-entitled estate. W. I. Burnett died August 5, 1929, at the age of eighty-five. He was survived by his widow, Lucena Burnett, four sons, a daughter, and two grandchildren, who were children of a deceased son. After his death three wills were found, the last of which was as follows:

"Tulare                              May 5, 192

"This is my last will and testament

"I have deded to my wife lots 14 & 15 in block 135 one half interest in same also one half interest in lots 21 & 22 on block 70 all in Tulare the other half to my ayers G. C. Burnett Grace Rosson C L Burnett Roy Burnett C. M. Burnett also Anne & A H Burnett Junior and all other property to be divided equally be*teen* my wife and ayers mentioned in this will

"W. I. BURNETT

"May 5 1927"

This is the third appeal which has been taken from the proceedings had in this estate, the other two having passed upon questions not involved in this appeal. (See *Estate of Burnett,* 6 Cal. App. (2d) 116 [44 Pac. (2d) 435]; *Estate of Burnett,* 11 Cal. (2d) 259 [79 Pac. (2d) 89].)

The decree of distribution made under the last will, dated May 5, 1927, distributes to Robert B. Gaylord and Robert B. Gaylord, Jr., as assignees of the widow, ⅛ of the estate, and

to the four sons, one daughter, and two grandchildren, each ⅛ of the estate.

It is the contention of the appellants that they, as assignees of the widow, were entitled to receive and have distributed to them ½ of the estate. This claim they base upon the use of the word "between" in the will, which they contend imports a division of the estate into two equal parts, one for the widow, and the other for the named heirs; that, had the testator intended that the widow, and each of the heirs, should receive an equal ⅛ share, he would have used the word "among", instead of the word "between".

Respective counsel, in their briefs, assume that the testator meant "between", when he used the word "beteen", and that he meant "heirs", when he used the word "ayers". The court will accept these meanings of these words as correct.

There can be no question, that in its grammatical sense, the preposition "between" is used when applied to two things, or to two groups of things, and that when more than two are referred to, the word "among" is more properly used. But this is not necessarily controlling.

Section 101 of the Probate Code provides: "A will is to be construed according to the intention of the testator." It therefore becomes the duty of the court to determine what the real intention of the testator was.

Appellants, in their brief, have referred to, and have quoted from a number of cases in other jurisdictions, but do not cite any California case. We believe that several California cases are decisive in this matter.

In *Estate of Morrison*, 138 Cal. 401 [71 Pac. 453], the will provided that the residue of the estate was "to be divided between my sister, Mrs. Wann, and her daughters and my brother, Edward Stettinius". It was contended by Stettinius, that he was entitled to ½ of the estate, and that the other half was to go to Mrs. Wann and her two daughters. The Probate Court, however, gave each ¼, which decree was upheld by the Supreme Court. The Supreme Court here says:

"As applied to persons and things, the word 'between' primarily refers to two, though Webster gives 'among' as a synonym, and in a large number of cases the word is used in wills where a *per capita* devise or legacy was to more than two. As to the weight to be given to the word 'between', it

was said in *Haskell* v. *Sargent,* 113 Mass. 341, 343: 'The use of the word *between,* strictly implying but two parties to the division, is a slight circumstance favoring the construction to which we incline, though not of much weight in itself independently of the other considerations mentioned.' "

In *Estate of Fisk,* 182 Cal. 238 [187 Pac. 958], the provisions of the will were very similar to these being here considered. In determining the effect of the word "between", the Supreme Court said:

"Giving to the word 'between' all the etymological significance to which it is justly entitled, that word alone is hardly sufficient to determine the question involved in the case. We turn, therefore, to a more complete analysis of the clause, the interpretation of which is here involved."

In interpreting wills, and in determining whether the beneficiaries of the will receive their share individually, or as a class, the courts have laid great stress on the question as to whether the beneficiaries are named both as a class, and as individuals. If they are named individually, then they share equally, share and share alike.

This matter was discussed in *Estate of Murphy,* 157 Cal. 63 [106 Pac. 230, 137 Am. St. Rep. 110]. In this estate, the Supreme Court, in reversing a decree of distribution which distributed the estate to the nieces and nephews, as a class, said:

"But assuming, however, that the language used in the clause in question is capable of two different legal meanings resulting from the testator devising his estate to the four children of his late sister, followed by other words of express devise to each of the children by name and in equal proportions, still this mention of them by name and a devise to them in equal shares will control the description of them as children of his deceased sister. If words, which, standing alone, would be effectual to create a class, are followed by equally operative words of devise to devisees by name and in definite proportions, the law infers from the designation by name and mention of the share each is to take, that the devisees are to take individually and as tenants in common and that the descriptive portion of the clause (children of a deceased sister) is intended merely as matter of identification."

After considering certain evidence taken, the Supreme Court says further:

"We are still remitted to the application of the general rule that when in a devise a class and individuals are both mentioned and nothing appears from other clauses of the will or extraneous evidence requiring a different construction, the devise will be construed as one to devisees individually and not to them collectively—to them as tenants in common and not to them as survivors of a class."

Referring again to *Estate of Fisk, supra*, the Supreme Court says:

"We are inclined to think that the strong inference to be derived from the use of the word 'between' by the testatrix, who was a cultured woman and well acquainted with the use of language, is overcome by the use of the names of the residuary legatees, and that a consideration of the entire residuary clause shows that she had in mind five individuals to whom the residuary legacies were to go, and that in providing for distribution these individuals thus named were to share alike."

In the instant case, the trial court took certain evidence, under section 105 of the Probate Code. This evidence bears out the conclusion of the trial court, that each of the eight persons named in the will, were to share alike. This evidence shows that the testator was eighty-three years of age, when he made the will; that for some time prior, he had received financial aid from his children; that he had married appellant, who was not the mother of his children, in 1915, when he must already have been seventy-one years of age; that the two pieces of property, the ½ interest of which he deeded to his wife, as stated in his last will, were acquired after their marriage and were presumptively community property. The property remaining in the estate, after his death, was his separate property, having been acquired by him prior to his marriage to appellant.

The three wills presented to the court, show the testator was illiterate, and incapable of knowing the shaded distinctions, and meanings, of the words "between" and "among". The three wills are almost, if not entirely, without punctuation, and in the first will, the given name of the wife is not correctly spelled. In the last will, the word "between", is spelled "beteen", and the word "heirs", is spelled "ayers".

For the reasons stated, the court is of the opinion, that it was the intention of the testator to divide his estate

into eight equal parts, between his wife, his children, and grandchildren, and that the decision of the trial court, in distributing ⅛ of the estate to the assignees of the widow, and ⅛ to each of the named "ayers" is reasonable and correct.

In *Estate of Bourn,* 25 Cal. App. (2d) 590, at page 600 [78 Pac. (2d) 193], the court says:

"And it is a well-established principle of law that when the construction given an instrument by a trial court appears to be reasonable and consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation even though it seems equally tenable." (See *Estate of Mallon,* 34 Cal. App. (2d) 147, at 158 [93 Pac. (2d) 245]; *Adams* v. *Petroleum Midway Co., Ltd.,* 205 Cal. 221 [170 Pac. 668].)

The second point raised by appellants, is that the executor should be charged with legal interest, compounded annually, on estate moneys, which it is claimed he commingled with his own funds, or used in his own business. The evidence on this point is very unsatisfactory, and consisted of the testimony of the executor alone.

It shows that he, at all times, carried an account in the bank as executor, in which he carried a balance; that he carried an account in his office, in his own books, under the name "G. C. Burnett, Executor of the Estate of W. I. Burnett", or in the Burnett Lumber Company books, as "G. C. Burnett, Executor", where he credited amounts of money received by him for the estate; that about a year before the decree of distribution was made, all of the money was deposited in the bank, under an account as executor, and was there at the time distribution was ordered. The executor stated that he was in a position to pay at any time distribution was made. It does not appear, at any place in the evidence, that the money was used by the executor.

Under this evidence, the trial court found that "it is not true that said executor should be charged with any interest on said sums" and rendered its decision in accordance therewith.

Appellants rely on the following cases to support their contention; *Estate of Stott,* 52 Cal. 403, *Estate of Clark,* 53 Cal. 355, and *Wheeler* v. *Bolton,* 92 Cal. 159 [28 Pac. 558]. In each of these three cases, it clearly appears that the execu-

tor not only commingled the funds of the estate with his own, but that he made use of them in his own business, and in one of the cases, the bank account in which the money was on deposit, was twice overdrawn.

The cases cited by respondents, all of which are of later dates than those cited by appellants, apply more directly to the facts of this case. In *Estate of Sylvar*, 1 Cal. App. 35 [81 Pac. 663], the court said:

"In regard to the money having been deposited with, and to some extent used by, Hoffman, it does not appear that the administrator consented to, or was in any way privy to such use. The administrator never used any of the money himself nor received anything for its use. We are not prepared to say that an administrator may not deposit the funds of the estate with a private banker or with an individual."

In *Estate of Sarment*, 123 Cal. 331 [55 Pac. 1015], the Supreme Court, in reversing a judgment allowing interest on funds of the estate, says:

"As he is required by the statute to take into his possession all of the estate of his intestate, and to give bond for its preservation, it would be inequitable to charge him with interest upon moneys which might at any time be received by him, from the date of their receipt, merely because he had retained them in his possession. . . . The court does not find, nor is there any evidence, that the administrators used the funds of the estate in their own business, or made any profit from their use. The mere fact that one of them mingled the proceeds of the sale with his own funds would not justify charging him with interest thereon since he had the right to their custody, and there is no provision of law which required him to keep them separate from all other funds." (See, also, *Estate of Mallory*, 99 Cal. App. 96 [278 Pac. 488], to the same effect.)

It will thus be seen, that the mere commingling of funds of an estate, with the private funds of an executor, or the retention of the funds in his possession, or the deposit of the same with another, does not of itself make the executor liable to the payment of interest thereon. It must actually appear that he used the money for his own benefit.

Applying these principles of law to the facts in the instant case, we must conclude that the findings of the trial court are supported by the evidence.

For the reasons herein set forth, the order of the trial court settling the final account and the decree of distribution are affirmed. Respondents to recover costs on appeal.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 13, 1941.